548 F.2d 857
 Socorro Hernandez BERNASCONI, Appellant,
v.
TEMPE ELEMENTARY SCHOOL DISTRICT NO. 3, Kenneth J. Fuller,
R. Craig Rover, William G. Payne, George M. Sanchez and
James R. Phillips, Members, Tempe Elementary School District
No. 3 Board of Trustees, in their official capacities,
Ernest F. Bivins, in his capacity as Personnel Director, O.
S. Fees, in his capacity as Superintendent of Schools,
Andrew R. Avila, in his former capacity of Principal of Veda
B. Frank School, Appellees.
 No. 75-2156.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 22, 1977.
Rehearing Denied April 8, 1977.
As Amended April 14, 1977.
 
 Theodore C. Jarvi, Jerry Levine, Scottsdale, Ariz., argued, for appellant.
 John E. Lundin, argued, Phoenix, Ariz., for appellees.
 Jerry D. Anker, Lichtman, Abeles, Anker & Nagle, P. C., David Rubin, Washington, D. C., filed a brief amicus curiae for the National Education Ass'n.
 Appeal from the United States District Court for the District of Arizona.
 Before ELY and WALLACE, Circuit Judges, and SOLOMON,* District Judge.
 OPINION
 ELY, Circuit Judge:
 
 
 1
 Mrs. Bernasconi, a public school teacher and counselor, appeals from the trial court's denial of relief on her claim that she was illegally transferred from her position at a certain school because of her national origin and because she had engaged in constitutionally protected free speech.[1] The District Court, sitting without a jury, dismissed the claims of national origin discrimination. It concluded, however, that the School District had indeed transferred the appellant in retaliation for her exercise of constitutionally protected free speech; nevertheless, the court denied relief on the ground that the transfer did not deprive Bernasconi of a "valuable governmental benefit."
 
 FACTS[2]
 
 2
 Bernasconi is a Mexican-American, born and reared in the community of Guadalupe, the population of which consists primarily of Mexican-Americans and Yaqui Indians. She obtained a bachelor's degree from the University of Dayton, and a master's degree from Texas Tech University with special training in counseling children of Mexican-American ancestry. Among her professional skills is that of bilingual psychometry, or intelligence testing and interpretation. After completing her education, she returned to Guadalupe, where she was employed by the Tempe Elementary School District as a counselor at the Frank School during the school year 1970-1971.
 
 
 3
 During the year, the appellant became concerned that children were being placed in classes for the mentally retarded because they were tested in English rather than in their native tongue. She attempted to correct this problem internally through contacts with the principal, one Avila, and the special services division of the School District. In the spring of 1971, Bernasconi, frustrated by the lack of action on the part of the school, advised certain parents of affected children to consult the local legal aid society. Relations between Bernasconi and the school authorities had by this time become significantly strained, with the result that she was denied access to the files of children placed in special education classes. The situation worsened in April, when Avila requested Bernasconi to obtain parental consent forms for the retesting of the children. Believing that post hoc authorization would require deception of local residents, Bernasconi refused. Avila then formally requested her transfer to another facility, although he had been considering the transfer for some time previously.
 
 
 4
 The plaintiff was transferred to the Rural School, a school attended primarily by well-to-do Anglo students. She sought reconsideration and the District's Board of Trustees conducted a hearing on August 24, 1971. The Board reviewed the transfer and affirmed the action. A letter of explanation was directed to the plaintiff on August 27, 1971, and, in part, the letter explained:
 
 
 5
 The Board considered these factors in making its decision: the counseling position at Frank School is abolished for 1971-1972 because of the lack of federal funds for this position; there are no teaching vacancies at Frank School and there are vacancies in other schools in the district; at least in making transfers from Frank School a primary consideration has been that teachers in their first year of service have been considered first for a transfer; guidelines for transfers of teachers which were developed by our own teachers' professional organization were adhered to in making all transfers; these guidelines provided that the principal make the final decision of who should be transferred because only he knew what transfer would least affect his school's educational program; there has been a change in the enrollment patterns at Frank and other schools which makes transfer of teachers necessary. (Emphasis added.)
 
 
 6
 No counselor was employed at the Frank School during the 1971-1972 school year, but in subsequent years a part-time counselor was there employed.
 
 
 7
 As a result of a suit filed by the "Guadalupe Organization," with which the plaintiff's husband worked, the State of Arizona subsequently agreed, in 1972, that a proper evaluation of a child's intelligence and verbal skills required testing in the child's primary language. In conjunction with this litigation, all except one of the Guadalupe children named as plaintiffs in the suit were removed from the special education curriculum at the Frank School and returned to regular classes.
 
 
 8
 "VALUABLE GOVERNMENTAL BENEFIT"
 
 
 9
 The District Court, as previously noted, denied relief on the ground that the plaintiff suffered no loss of a "valuable governmental benefit," since her transfer involved no loss of pay or status. The court's holding on this point appears to raise a question of first impression in our Circuit.
 
 
 10
 The term "valuable governmental benefit" originated in the opinion of the Supreme Court in Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971), which dealt with the non-renewal of an untenured professor's contract of employment. The Court held that:
 
 
 11
 ". . . even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible. . . ." Id. at 597, 92 S.Ct. at 2697.
 
 
 12
 We note initially that the above quotation must be read in light of the context from which it derived, i. e., the defendants' claim that Perry's interest in reemployment was only a benefit to be accorded by the college, and not a property right. In our case, the School District seizes upon the language employed by the Supreme Court to broaden First Amendment protection, and urges us to construe it as a limitation upon First Amendment rights. We do not reach this somewhat unusual interpretation of Perry, however, because even if there is a point at which government action is so de minimus that it will not trigger a remedy for abridgement of First Amendment rights, ours is not such a case. The transfer of Bernasconi from a position uniquely suited to her talents and desires is precisely the kind of action that is proscribed by Perry.
 
 
 13
 Other courts which have considered this question agree with the view that we take. In Adcock v. Board of Education, 10 Cal.3d 60, 109 Cal.Rptr. 676, 513 P.2d 900 (1973), the Supreme Court of California applied First Amendment protection to all administrative sanctions, noting that "(l)esser penalties than dismissal can effectively silence teachers and compel them to forego exercise of the rights guaranteed them by our Constitution." 109 Cal.Rptr. at 680, 513 P.2d at 904. The Fourth Circuit has held that a classroom teacher's public statements regarding his homosexual status did not justify his transfer from teaching to administrative work, even though without loss of pay.[3] In the light of the findings of the District Court in the present case, Bernasconi cannot lawfully be denied a remedy on this ground.
 
 RETALIATORY TRANSFER
 
 14
 In anticipation of a possible reversal on the "benefit" question, the School District urges that we set aside the District Court's finding that the transfer was based partially upon retaliation for the exercise of First Amendment rights. This, we decline to do. The court's finding in this respect is manifestly protected by the "clearly erroneous" standard of Rule 52(a), Fed.R.Civ.P.
 
 
 15
 The evidence need not have demonstrated that Bernasconi's complaints were the sole cause of her transfer. It was necessary only that she prove that her complaints "partially" motivated her transfer. Gray v. Union County Intermediate Education District, 520 F.2d 803 (9th Cir. 1975). On the other hand, in order to protect the interests of both Bernasconi and the School Board, the plaintiff's evidence must have demonstrated that the transfer's purpose was "to quell legitimate dissent" or "to punish expressive behavior." Mabey v. Reagan, 537 F.2d 1036, 1045 (9th Cir. 1976).
 
 
 16
 The District Court found that Avila, the principal of Frank School, was primarily responsible for the transfer even though other persons reviewed his decision. The personnel director for the District, Bivins, testified that the principal's decision on transfers is given "very serious consideration." In addition, a letter Mrs. Bernasconi received from the School Board informing her of the transfer and the results of the hearing stated that "the principal make(s) the final decision of who should be transferred." Since no contrary evidence was introduced, the court's finding that Avila was responsible for the transfer cannot appropriately be held to have been clearly erroneous.
 
 
 17
 The record establishes that Avila initially sought to have Bernasconi transferred because of her complaints about the special education program. Bivins testified that although Avila did not communicate in writing his intention to transfer Bernasconi and the reasons therefor until May 3, 1971, Avila had discussed the transfer with him, Bivins, earlier in the spring of 1971. Most significantly, Avila testified at length of his disapproval of Bernasconi's complaints about the special education program, that he communicated his disapproval to her several times, and that he requested her transfer because of her activities in connection with the special education program. Although the School District argues that Avila's reason for requesting the transfer was Bernasconi's insubordination, Avila's own contrary testimony rebuts this argument. The District Court's finding on this issue was supported by substantial evidence and is therefore not clearly erroneous.[4]
 
 PICKERING v. BOARD OF EDUCATION
 
 18
 Finally, the School District argues that the balancing test suggested in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), requires that we affirm the judgment. We note first that the trial judge conscientiously applied the Pickering test, as the following paragraph from the District Court's carefully considered remarks indicates:
 
 
 19
 In concluding that the plaintiff's communications constituted protected speech, the court has attempted to balance the interests of the teacher, as a citizen, in commenting upon matters of public concern, and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. Ring v. Schlesinger, 164 U.S.App.D.C. 19, 502 F.2d 479 (1974). The court has been attentive to the four factors noted in Pickering of (1) co-worker harmony, (2) interference with the regular operations of the schools, (3) sensitivity of the relationship between the speaker and the criticized superior, and (4) close contact between the speaker and the subject of the criticism. Where, as in the instant case, the public statements made by the plaintiff were directed primarily at a general practice rather than at named individuals, the court finds the balance to tip in favor of the teacher's right to speak. An important factor influencing the court's finding is the nature of the problem to which the plaintiff's communications addressed themselves: that is, a governmental practice which, in the context of the public schools, tended disproportionately adversely to affect a particular ethnic group. The court recognizes that the plaintiff's communications may have had the effect both of leading to a change in what had been standard operating procedure in the schools and of ruffling the feathers of some of the plaintiff's co-workers. That, even so, the plaintiff's right to speak ought to be protected in consonance with the first amendment's primary concerns.
 
 
 20
 Since the trial judge so carefully weighed the variety of complex factual circumstances involved, we accord to his decision a great deal of deference. To us, however, Pickering and its progeny[5] appear to indicate that this court itself must strike the balance. Accordingly, we have ourselves undertaken a most careful review of the record. We agree with the conclusion of the district judge that the School District's interest in being free from general criticism cannot outweigh the right of a sincere, educational counselor to speak out against a policy she believes to be both harmful and unlawful. The disposition is not controlled by Gray v. Union County Intermediate Education District, supra, because there is absolutely no suggestion in our record that Mrs. Bernasconi engaged either in harassment, or in the deliberately insubordinate conduct of the plaintiff in Gray. As the Supreme Court noted in Pickering, each case presents significant and important varieties of factual circumstances that should properly affect the decision. While it may thus be impossible to fashion a general rule, we have no doubt whatsoever that the factual circumstances of the present case require that Bernasconi be granted relief.
 
 CONCLUSION
 
 21
 Our determination that we cannot affirm the District Court's judgment on any of the grounds suggested by the School District requires us to consider the appropriate scope of our remanding Order. After the District Court issued its decision, the Supreme Court of the United States decided Mt. Healthy City School Dist. v. Doyle, ----- U.S. -----, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Court there decided that in situations such as that presented here, a school district must be allowed to show "by a preponderance of the evidence, that it would have reached the same decision [regarding the teacher's employment] even in the absence of the protected conduct." Id. at -----, 97 S.Ct. at 576. In the present case, the School District presented evidence that the transfer of Bernasconi was based solely on federal funding problems.[6] The District Court appeared to reject that contention, but we think that adequately precise findings on the point were not made. If, on remand, the District Court concludes that the School District did not meet its burden of showing "that it would have reached the same decision as to [Mrs. Bernasconi's transfer] even in the absence of the protected conduct," then the District Court should forthwith proceed to fashion an appropriate remedy fitting the somewhat unusual circumstances and according to Bernasconi a fair measure of the relief to which she is entitled.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Gus J. Solomon, Senior District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The action was brought pursuant to 42 U.S.C. § 1983 (1970) and 42 U.S.C. § 2000e-5(f) (Supp. II, 1972). The plaintiff invoked the special jurisdiction of the federal courts to hear such claims. 28 U.S.C. § 1343(3), (4) (1970); 42 U.S.C. § 2000e-5(f)(3) (Supp. II, 1972)
 
 
 [2]
 Essentially, the facts are taken from the unpublished opinion of the District Court
 
 
 [3]
 Acanfora v. Board of Education of Montgomery County, 491 F.2d 498 (4th Cir.), cert. den. 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974). Acanfora was denied relief on the ground that he had consciously omitted his affiliation with a homosexual group in filling out his application for the teaching position
 
 
 [4]
 We also reject two other attacks on this finding. The School District argues that funding problems were solely responsible for the decision not to retain Bernasconi as a counselor at the Frank School, and therefore, Avila's motivation was irrelevant. The District Court considered this issue with care and concluded that whereas funding problems may have necessitated some transfers in the district, Mrs. Bernasconi was singled out for transfer based on impermissible considerations. We agree that Bernasconi met the burden of showing that her protected speech was a 'motivating factor' in her transfer. Cf. Mabey v. Reagan, 537 F.2d 1036, 1044-45 (9th Cir. 1976)
 Next, the School District makes the argument that Bernasconi's pleadings charge only that she was transferred for her connection with the special education lawsuit, and that Avila had no knowledge of the lawsuit at the time he recommended her transfer. But the complaint, together with the pretrial statement, indicate that Avila's knowledge of the suit was not the only reason alleged for the transfer. In addition, Bernasconi alleged that Avila's knowledge of her activities, which culminated in the legal proceedings, contributed to his decision to request the transfer. Therefore, the School Board's argument in this respect is not well founded.
 
 
 [5]
 See Mabey v. Reagan, 537 F.2d 1036 (9th Cir. 1976); Gray v. Union County Intermediate Education District, 520 F.2d 803 (9th Cir. 1975); Duke v. North Texas State University, 469 F.2d 829 (5th Cir. 1973); Chitwood v. Feaster, 468 F.2d 359 (4th Cir. 1972)
 
 
 [6]
 See footnote 4, supra