**Ida REICHERT and Ludlow Education Association, Plaintiffs-Appellants, Cross-Appellees,**

v.

**Jon E. DRAUD, et al., Defendants-Appellees, Cross-Appellants.**

**Nos. 81–5367, 81–5425.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1983.

Decided March 10, 1983.

Arthur L. Brooks, Lexington, Ky., James Brudney (argued), Michael H. Gottesman, Bredhoff, Gottesman, Cohen, Chanin, Weinberg & Petramalo, Washington, D.C., for plaintiffs-appellants, cross-appellees.

Robert E. Ruberg (argued), O'Hara, Ruberg, Osborne & Taylor, William Bubenzer, Covington, Ky., Phillip P. Durand, Ambrose, Wilson & Grimm, Knoxville, Tenn., for defendants-appellees, cross-appellants.

Before KEITH and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This action was filed under 42 U.S.C. § 1983 by Mrs. Ida Reichert (referred to herein as the appellant) and Ludlow Education Association against the Board of Education of Ludlow, Kentucky, Jon E. Draud, Superintendent of the Ludlow School System, Robert Taylor, Principal of Ludlow High School, and Ronald Jones and Ralph Dillard, members of the Board of Education, charging violations of First Amendment rights.

Plaintiffs sought injunctive relief and Mrs. Reichert also sued for $100,000 in compensatory damages and $100,000 in punitive damages against the individual defendants.

The Ludlow Education Association (LEA) is a voluntary association of teachers. Appellant served as president of LEA for several years and was serving in this capacity at the time the complaint was filed. The Ludlow school system consists of from five to six hundred students and approximately 50 teachers, including a high school, junior high school and elementary school. Appellant had been teaching psychology and English at Ludlow High School for more than 17 years and also served as speech and drama coach. On April 30, 1980, she was called to the office of appellee Taylor, the high school principal, and informed that one change was being made in her teaching schedule for the following year—that she would teach a class in eighth grade English instead of her class in psychology. The district court found that this change in schedule involved no reduction in rank, no actual or potential loss of income, and no formally adverse personal action. It was the only change announced then in appellant's schedule. The district court found that no other changes were anticipated by the school administration at that time. Appellant then resigned as speech and drama coach. The principal urged that she reconsider her resignation and pointed out that it was customary for the speech and drama coach to teach a class in speech and drama and, therefore, if appellant resigned as coach, other changes in her schedule would be required. Later appellant was urged by the principal, the superintendent of education and the board of education to reconsider her resignation as speech and drama coach. When she refused to do so, a new speech and drama teacher and coach was employed and appellant was given other assignments. The district court found that these later changes in her schedule were not the proximate result of First Amendment activities, but were caused by appellant's resignation as speech and drama coach.

The district court further found that "there was no satisfactory proof that this single course change would result in a chilling effect on free speech among teachers in the school system, and that, therefore, there was no actionable First Amendment violation." The complaint, therefore, was dismissed.

Appellant asked to be reinstated to her former assignment as teacher of psychology. The request was denied. The district court found that, even though the initial schedule change was not caused by appellant's exercise of First Amendment rights, the refusal of school authorities to grant her request for restoration to her former course of teaching psychology was motivated by unconstitutional retaliation for the exercise of First Amendment rights. Despite the latter holding, the action was dismissed.

Appellant and LEA appeal, challenging the validity of the decision of the district court as a matter of law. The appellee school officials cross-appeal from the finding of the district court that failure to grant appellant's request to be reinstated to her original psychology teaching schedule was motivated by improper or unconstitutional retaliation for her exercise of First Amendment rights.

Reference is made to the published decision of the district court, 511 F.Supp. 679 (E.D.Ky.1981) for a detailed recitation of pertinent facts.

We affirm the decision of the district court in dismissing the complaint on authority of *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and *Hilderbrand v. Board of Trustees of Michigan State University,* 662 F.2d 439 (6th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982).

In *Hilderbrand,* this court set forth the proper approach in such cases in three steps:

(1) The threshold question is whether the plaintiff's conduct deserves constitutional protection. 662 F.2d at 442.

(2) If the court finds that an employee's conduct was protected by the first amendment, the finder of fact must determine whether [the action taken was] because he engaged in the protected conduct. The employee's protected conduct must be a "substantial factor" or a "motivating factor" in the employer's decision. 662 F.2d at 443.

(3) Once the employee meets this burden [as outlined in 2 above] the burden is on the employer to prove that the action the employee is complaining about would have taken place absent the protected conduct. *Id.* pp. 442–3.

As to the first *Hilderbrand* question, the district court found that appellant's representation of LEA and other teachers at board meetings, in the press, and in conferences with school administrators was a protected First Amendment activity, citing *Columbus Educational Association v. Columbus City School District,* 623 F.2d 1155 (6th Cir.1980). With respect to the second *Hilderbrand* question set forth above, the district court found that appellant's First Amendment activities were not a substantial or motivating factor in the action of the school officials in changing her teaching schedule from a class in psychology to a class in English.

With respect to the third *Hilderbrand* question, the district court made findings of fact demonstrating that the change in appellant's teaching schedule would have taken place absent her protected First Amendment conduct. Included in the oral findings of fact of the district court, announced from the bench, were the following:

In December 1979, a Mr. David Stamm, who was a teacher working for one year at least as assistant principal and also doing some graduate work at Xavier University, undertook to revise the high school teaching schedule, both for whatever assistance it might be to the administration, particularly Mr. Taylor, and also to further his work at Xavier University and receive some credit toward an advanced degree. It wasn't an internship exactly—but he was trying to do something practical and also improve his academic standing as well. Substantial revisions were required in the schedule.

The court believes Mr. Stamm and accepts his testimony that at this time he was not conscious of any controversy. It had not arisen yet. The court accepts that there had to be a reduction in the number of teachers. At least they thought there did at that time. This is demonstrated by the statement of Dr. Draud to a board meeting.

It shows in the minutes that several positions had to be eliminated. This was not part of the controversy, but it is part of some report Dr. Draud was making to the board. This is also shown by the deposition of Mr. Scheuer, the professor at Xavier University, who said that as part of the background for the paper, Mr. Stamm told him he had to revise a schedule where several positions had to be eliminated. This could not be something that they would have made up to tell Mr. Scheuer, because this controversy could not have been anticipated. All of this was before the controversy between LEA and the administration arose.

Mr. Stamm, who made up this initial schedule, did at that time schedule Mrs. Reichert to be taken out of the psychology class and receive a class in eighth-grade English. He did this because it met his academic goals. At that time, that was all he was concerned about. He did not consult the individual teachers

involved in the schedule. By previous arrangement, he was to give the results to Mr. Taylor. This work continued on into January of 1980. The primary significance I place on this is the time it occurred and the fact that neither Stamm nor Scheuer at Xavier saw anything objectively demeaning or degrading about this one schedule change—it was all done outside of the controversy—neither did the other administrators that worked on the schedule. The court accepts that testimony.

Thus the district court found, and the evidence in the record demonstrates, that the decision to change appellant's teaching schedule was made before the beginning of the controversy between her and school officials. From the record it appears that the school system was facing budget problems. The school principal (appellee Robert Taylor), assistant principal David Stamm and Mark Modlin, an assistant professor of sociology at Northern Kentucky University, were in charge of evaluating teaching schedules and recommending changes to be made. They projected in 1979 that, due to declining enrollment, it would be necessary for the school board to eliminate one and one-half teaching positions for the 1980 school year. The schedule changes were made to adjust to this cutback in teaching personnel. The schedules of a number of other teachers also were affected. The change in the schedule of appellant was considered by these three school officials to be reasonable because she was not certified to teach in the field of psychology but was certified to teach high school English.

Professor Modlin testified that "the rationale was that we were looking for an English teacher to teach the eighth grade. There were staff cuts. Because Mrs. Reichert in my opinion is an excellent English teacher and was certified in English, we though that would be an appropriate move." He further testified that from an administrative standpoint, the teaching of English has priorities in educating children because four English credits are required to graduate from high school, and that appellant was not certified to teach psychology but was certified to teach high school English.

The bulk of the work on the schedule changes had been completed by the end of January 1980. The incidents of appellant "speaking out" in the exercise of her First Amendment rights first occurred in February and March 1980.

Assistant principal Stamm testified that when he recommended that appellant teach an additional English class instead of psychology, he was not aware of any controversy involving appellant, LEA and the board of education. As pointed out above, this controversy did not begin until after Mr. Stamm had made his recommendation and the decision to make the change in appellant's teaching schedule had been determined.

This court, accordingly, concludes that the standards set forth in the unanimous decision of the Supreme Court in *Mt. Healthy City Board of Education v. Doyle, supra,* 429 U.S. at 285, 97 S.Ct. at 575, and the opinion of this court in *Hilderbrand v. Board of Trustees, supra,* 662 F.2d at 442–43, are met fully in the present case. In *Mt. Healthy Board of Education,* 429 U.S. at 285–86, 97 S.Ct. at 575, the Supreme Court held: "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct."

The record in the present case establishes that the protected First Amendment conduct of appellant did not play a substantial part in the decision to change her teaching schedule. The same decision would have been made by the appellee school officials if the incidents involving the exercise of appellant's asserted First Amendments rights had not occurred.

The judgment of the district court dismissing the complaint is affirmed. No costs are taxed. The parties will bear their own costs on this appeal.

KRUPANSKY, Circuit Judge, concurring.

I agree that Reichert and the Ludlow Education Association (LEA) failed to es-

tablish a claim of First Amendment deprivation with respect to the initial changes in Reichert's schedule and teaching assignment. However, because the decision of the district court did not rest entirely on this single issue and, since the district court, in my opinion, erred both factually and in its legal analysis, I am compelled to write separately.

Initially, I would emphasize that Reichert's legitimate advocacy of the positions of the LEA was protected First Amendment activity. *See e.g. Columbus Education Association v. Columbus City School District,* 623 F.2d 1155 (6th Cir.1980). *Compare Anderson v. Evans,* 660 F.2d 153 (6th Cir.1981) (interest of school board in maintaining an efficient and regularly functioning school system outweighed teacher's interest in making racial slurs). Defendants do not seriously contest this proposition.

As Judge Phillips' opinion clearly and concisely illustrates, the record irrefutably discloses that the initial decision to reassign Reichert's teaching responsibilities was not the result of her First Amendment activities. Accordingly, she possessed no constitutional claim with respect to that action.

The district court proceeded, however, to find that, following Reichert's expression of displeasure with her realigned schedule and teaching assignment changes, the defendants would have reinstated her to her previous class schedule and teaching assignments but "the reason they did not do something for her when she let them know how upset she was was because she had been a thorn in their side at these [school board] meetings." App. 337 [1] This scenario clearly establishes a claim for relief under *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[2]

It appears that the district court was concerned that "a federal court action could be brought to challenge each and every" school board decision. 511 F.Supp. at 685, and this concern prompted it to add a new requirement to the *Mt. Healthy* criteria. It concluded "that the proper test to be employed is whether the action or pattern of actions taken with regard to a government employee would, objectively viewed, be likely to chill the exercise of constitutionally protected speech of others in a comparable fashion." 511 F.Supp. at 686 (footnotes omitted). Thereupon, the district court concluded that there was no "satisfactory proof" that the defendants' actions "would result in a chilling effect on free speech among teachers in the school system," and accordingly no constitutional violation had occurred.

In analyzing the lower court's disposition, it is preliminarily observed that, although *Mt. Healthy* addressed a situation where a school board refused to renew a teacher's contract, it is "now established that the same principles apply when retaliation takes place in the form of altered employment conditions rather than termination." *Allaire v. Rogers,* 658 F.2d 1055, 1058 n. 2 (5th Cir.1981) *cert. denied* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982), rehearing denied 457 U.S. 1126, 102 S.Ct. 2949, 73 L.Ed.2d 1343 (1982) (reduction of salary). *See e.g. Waters v. Chaffin,* 684 F.2d 833 (11th Cir.1982) (demotion and transfer); *Childers v. Independent School District No. 1,* 676 F.2d 1338 (10th Cir.1982) (change in teaching assignments); *Bowen v. Watkins,* 669 F.2d 979 (5th Cir.1982) (denial of promotion); *Columbus Education Association v. Columbus City School District, supra* (letter of reprimand); *Yoggerst v. Stewart,* 623 F.2d 35 (7th Cir.1980) (letter of reprimand); *McGill v. Board of Education of Pekin Elementary School District No. 108,* 602 F.2d

---

1. The district court opinion is published. 511 F.Supp. 679. However, not all the findings of fact of the lower court, including the above-quoted finding, are reprinted in the published opinion. Where possible, reference will be made to the published text.

2. The district court did not bifurcate the factual inquiry as directed by *Mt. Healthy. See ante* at 1170. Nevertheless, the lower court, essentially, made the crucial finding that "but for" the exercise of her First Amendment rights, Reichert's previous teaching schedule would have been reinstated.

774 (7th Cir.1979) (transfer); *Bernasconi v. Tempe Elementary School District No. 3,* 548 F.2d 857 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977) (transfer). *Cf. Delong v. United States,* 621 F.2d 618 (4th Cir.1980) (transfer or reassignment because of political affiliation actionable, but only where tantamount to dismissal).

In the case at bar the district court relied, in part, on the decision of the Seventh Circuit in *McGill v. Board of Education, supra.* In *McGill* a teacher was transferred from one school to another without loss of pay, seniority or other rights. Rejecting the defendants' contention that such a transfer was not actionable, the Seventh Circuit held that "[t]he test is whether the adverse action taken by the defendants is likely to chill the exercise of constitutionally protected speech." *Id.* at 780.[3]

With due respect to the Seventh Circuit and the trial judge in this action, I believe the test enunciated by the Seventh Circuit is inapplicable to cases, such as the within cause, involving alleged governmental retaliation for an employee's exercise of free speech. Rather, as the Supreme Court stated in *Mt. Healthy City School District v. Doyle, supra,* at 284–85, 97 S.Ct. at 574–75, an employee may "establish a claim ... if the decision ... was made by reason of his exercise of constitutionally protected First Amendment freedoms." Nothing more need be shown.

Certainly, the underlying rationale of *Mt. Healthy City School District v. Doyle,* is that if the government were permitted to deny employment to a person because of his exercise of First Amendment Rights, then, ultimately "his exercise of those freedoms would in effect be penalized and inhibited." *Perry v. Sinderman,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). It does not follow, however, that actual inhibition of free expression must be demonstrated in order to support a constitutional violation. Any time government action adverse

to an employee is taken in direct response to the employee's exercise of free speech, an unmistakable message is subtly telegraphed to the employee warning that open communication of his views will result in punishment by the government. The warning constitutes a violation regardless of whether it is heeded.

As the Supreme Court remarked in the context of invalidating certain aspects of a patronage system on First Amendment grounds:

Rights are infringed where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason.

*Elrod v. Burns,* 427 U.S. 347, 360 n. 13, 96 S.Ct. 2673, 2683 n. 13, 49 L.Ed.2d 547 (1976) (plurality opinion). The loss of the penny may not induce a single person to forego his or her right to belong to a political party, but a constitutional violation has nonetheless occurred.

Furthermore, the district court's test appears to indicate that in the event a plaintiff could demonstrate that the exercise of his or her First Amendment rights was, in fact, restrained by the government's action, the plaintiff could not recover unless the government's action "would be likely, as a practical matter, to chill the exercise of First Amendment rights *of co-workers.*" 511 F.Supp. at 687 (emphasis added). Implicitly, the lower court's standard could permit the government to suppress the voices of the timid and the meek so long as its actions would not silence the "reasonable man." Surely, the First Amendment is not so limited.

I sympathize with the lower court's concern regarding the intrusion of federal courts into the evolution of day-to-day decisions of state and local agencies. The government however is free to make decisions for any number of reasons or no reason at all as long as those decisions are not made "on a basis that infringes [a person's] constitutionally protected interests—espe-

**3.** The district court acknowledged that its test would be even stricter than the Seventh Circuit's because the district court would require

proof of an "objective" rather than "subjective chill". 511 F.Supp. at 686 n. 27.

cially, his interest in free speech." *Perry v. Sindermann, supra,* 408 U.S. at 598, 92 S.Ct. at 2698.

For the foregoing reasons, the district court erred in employing a "chilling effect" test in the instant matter.

As indicated, *ante,* at 1169, the defendants have cross-appealed challenging the lower court's finding of fact. Confronting that aspect of this case, it appears that the crucial finding in issue reads as follows:

> [T]he court does find that the intent of the administration in not changing [Reichert's schedule] back when she let them know how much it meant to her, and how upset she was, considering that she had 17 years of seniority, was because of the controversy. When somebody comes in who is one of your best teachers, who has 17 years seniority and says, "I am awfully upset about this schedule change," ordinarily you would try to do something for them. The court finds that the reason they did not do something for her when she let them know how upset she was was because she had been a thorn in their side at these meetings.

(App. 337).

It should again be emphasized that, as Judge Phillips' opinion clearly articulates, Reichert's initial schedule change resulted from evaluations and policy decisions entirely independent of her protected activity. Her schedule and teaching assignment changes were but one of several changes initiated, in part, because of budgetary constraints. Furthermore, Reichert's schedule and teaching changes involved replacing a teaching assignment in psychology, a subject she was not certified to teach, with a teaching assignment in English, a subject in which she was certified.

Thus, the evidence with respect to the initial schedule and teaching assignment changes not only establishes that they were free of improper motive, but, moreover, that the schedule and teaching assignment changes were prompted by legitimate concerns over the budget and adherence to proper certification practices and procedures. While these facts do not preclude a finding that improper motive arose subsequent to the initial decision on the schedule and teaching assignment changes, the facts are weighty evidence to the contrary.

Of greater significance, the district court's finding, as it relates to the school board's refusal to reassign Reichert to her former responsibilities and teaching assignment in psychology, in essence, simply represents the district court's perception of what the defendants could have gratuitiously done to accommodate a longtime employee. However, there is no evidence that other longtime employees who objected to teaching assignments and schedule changes were successful in arranging personally more desirable assignments.

In fact, nothing in the record supports the lower court's conclusion that Reichert's schedule was not reinstated "because" of her First Amendment activity. The defendants, at most, may have considered this activity in refusing her request for reassignment to her previous schedule and teaching duties, but the evidence conclusively demonstrates that they "would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy City School District Board of Education v. Doyle, supra,* 429 U.S. at 288, 97 S.Ct. at 576.

I am thus constrained to conclude that the lower court's finding that Reichert's schedule and teaching assignments were not reinstated because of her exercise of free speech is clearly erroneous. Hence, she has failed to support, as a matter of fact, a constitutional violation.

Accordingly, I concur in affirmance of the judgment for defendants.