915 F.2d 1574
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas R. WARREN, Jr., Plaintiff-Appellee,
v.
Larry LACK, Penny Bernhardt, Ronald McRady, and Dennis
Talley, Defendants-Appellants.
 No. 90-5068.
 United States Court of Appeals, Sixth Circuit.
 Oct. 9, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges, and JULIAN ABELE COOK, Jr., Chief District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 Appellee Thomas Warren, a state prisoner, asserts that appellants caused him to be disciplined and transferred from the Middle Tennessee Reception Center (MTRC) due to his successful efforts as an inmate advocate, or "jailhouse lawyer," and as an inmate advisor for prisoners at disciplinary hearings. Appellants Lack, a warden at MTRC; Bernhardt, an associate warden at MTRC; McRady, an associate warden at MTRC; and Talley, a correctional officer at MTRC, moved for summary judgment on qualified immunity grounds. A United States magistrate recommended that the District Court deny this motion, and the court upheld the magistrate's Report and Recommendation. We REVERSE the judgment of the District Court and REMAND this matter to the District Court for entry of an order consistent with this opinion.
 
 
 2
 Appellee's disciplinary charge resulted from a letter he wrote to a female MTRC officer performing clerical duties in McRady's office. The letter told of Warren's 12 years of incarceration and of his dreams for the future and his hope to establish a meaningful relationship with his dream woman, someone just like the correctional officer, or it can be inferred with her, and his great admiration for the officer whom he addresses familiarly as Dee Dee. Warren was serving a lengthy sentence for a sexual offense. Romantic association with an inmate was grounds for discharge of MTRC personnel.
 
 
 3
 The disciplinary board found that the letter was disrespectful and recommended his transfer to another institution. Appellee contends that the normal policy at MTRC is that any correctional officer or employee who witnesses an infraction of the disciplinary rules must immediately issue a disciplinary charge against the offending inmate. Here, after reading the letter which was given to him by the female correctional officer, appellant McRady did not write up the offense, but reported it to appellant Lack who had recently been appointed MTRC warden. Lack then called in Michael Tyler, MTRC's chief of internal affairs, and directed Tyler to issue a disciplinary charge against Warren for disrespect and extortion. Warren contends that this was not the usual procedure. He asserts that normally, Tyler would first investigate a case before issuing a write-up, but that here, Tyler was directed to issue the disciplinary report on Warren before Tyler had an opportunity to talk with the employee to whom the language of Warren's letter was allegedly disrespectful. Tyler stated that he cannot remember ever writing up another inmate for the same offense. Appellant Lack also stated that he cannot remember whether he ever directed a staff member to write up any other inmate for any offense. However, although letter writing from inmates to staff is not uncommon, this was the only time that a staff member ever brought a letter to Lack's attention that had been written by an inmate to a staff person.
 
 
 4
 As to the charge of disrespect, McRady stated that this charge was a matter of interpretation. Disrespect does not ordinarily result in segregation or loss of job pending a disciplinary hearing.[1] Warren contends that in order to transfer him and to take his job, the appellants charged him with extortion as well. Warren contends that appellant Lack, who directed the write-up, has difficulty pointing out the extortion language in Warren's letter. The disciplinary board eventually found no extortion.
 
 
 5
 Warren alleges that when he chose an inmate advisor for this disciplinary proceeding, this inmate advisor was advised by McRady to stay away from Warren's case, an allegation supported by the affidavit of the advisor and denied by McRady. Warren also contends that his inmate advisor was unable to speak with the employee who had received the letter. Warren's case was continued on two occasions over his objections. At the disciplinary hearing, Warren admitted writing the letter, but denied that he had anything but the best of intentions. The disciplinary board found Warren guilty of disrespect and recommended a transfer to another institution. Talley served on the disciplinary board, but in accordance with the uniform procedure, did not vote when the two other members agreed.
 
 
 6
 Despite recommendations from his housing unit, the reclassification board that was chaired by appellant Bernhardt followed the recommendation of the disciplinary board and reclassified Warren to the Wayne County Work Camp. Warren argues that none of the appellants could recall any other instances in which an inmate was transferred for disrespect.
 
 
 7
 Although Warren was transferred to the Wayne County Work Camp, the officials there determined that he was ineligible to be transferred there and returned him to MTRC. After his return, Warren received a summary reclassification while waiting in the prison vehicle and was transferred to Turney Center. The reclassification was done on this emergency basis to avoid the paperwork of readmitting him to MTRC and again transferring him.
 
 
 8
 Appellee acknowledges that state prison officials, like other "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Appellee argues, however, that there remain genuine issues of material fact regarding whether the conduct of the officials in the present case violates clearly established legal rights of which a reasonable person would have known.
 
 
 9
 When the issue of qualified immunity is raised, "the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law." Dominque v. Telb, 831 F.2d 673, 677 (6th Cir.1987) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). With respect to summary judgment motions on qualified immunity grounds, this Court has held:
 
 
 10
 Where, as here, discovery has taken place and the defendant officials have moved for summary judgment on the basis of qualified immunity, we believe the plaintiff must present direct evidence that the officials' actions were improperly motivated in order to have any hope of defeating the motion. The plaintiff, "to avert dismissal short of trial, must come forward with something more than inferential or circumstantial support for [her] allegation of unconstitutional motive."
 
 
 11
 Poe v. Haydon, 853 F.2d 418, 432 (6th Cir.1988) (emphasis added, citations omitted), cert. denied, 488 U.S. 1007 (1989). In the later case of Crutcher, we explained:
 
 
 12
 It is true that Poe states that "the plaintiff must present direct evidence that the officials' actions were improperly motivated in order to" resist a qualified immunity summary judgment motion. This does not mean that [the plaintiff] must bring in an admission from the lips of her defendant. She may rely on proof that would be strong enough to allow a jury to return a verdict for her under appropriate instructions, and it is clear that the law allows victims of race discrimination, as in other cases, to prove their cases by inferential and circumstantial proof. To the extent that [appellant] reads Poe to set a higher standard for qualified immunity than applies on the merits, he is wrong.
 
 
 13
 Crutcher v. Commonwealth of Kentucky, 883 F.2d 502, 504 (6th Cir.1989) (emphasis added, citation omitted).
 
 
 14
 Appellee has failed to present sufficient evidence, which, if believed by a jury, would lead to a conclusion that his advocate activities were a "motivating factor" behind the actions taken by appellants. Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir.1983).[2] In the absence of evidence that appellants acted in concert, they are entitled to individual consideration of the evidence that supports their qualified immunity. Appellee presented affidavit testimony from himself and other inmates suggesting that appellant Talley made sarcastic remarks about Warren in the presence of others and that he made derogatory remarks about Warren's work before the disciplinary board and about Warren's character. The affidavits do not state what was actually said. Appellee's affidavit states that McRady said appellee was manipulative and that McRady intended to take action to have appellee transferred because of his inmate advocate activities. However, neither caused the disciplinary proceeding to be initiated. McRady merely delivered the letter to the Warden who made the decision to file the disciplinary complaint. The only complaint with respect to McRady is that he failed to follow normal procedures in not writing up appellee's offense but instead reporting it to Lack. This was at most a minor deviation from normal procedure. It has in no way affected the outcome of the disciplinary hearing. Indeed, in view of McRady's alleged prior statements regarding Warren, it was probably preferable that the decision to initiate disciplinary proceedings be made by someone else. Any connection between McRady's actions in handing the letter over to Lack and the decision to initiate the disciplinary hearing is too attenuated to justify a conclusion that McRady's actions constituted retaliation for protected conduct. Surely he was not required to ignore the letter. Although there is an issue of fact as to whether Tally stated that Warren would be transferred if he continued his legal activities and advocacy on behalf of other inmates and although Talley was a member of the disciplinary board, he did not vote. Thus, he cannot be charged with causing Warren to be transferred. By reason of his transfer he lost his position as inmate advisor.
 
 
 15
 With respect to appellants Lack and Bernhardt, appellee argues that each independently handled his case in a disparate manner. Lack allegedly called in the chief of internal affairs and directed him to issue a disciplinary charge before investigating the matter, contrary to normal procedures.
 
 
 16
 Warren was given a disciplinary hearing. He is really arguing that he should not have been disciplined for writing the letter. Prison officials are in a better position than the courts to determine whether letters of the type received here are disrespectful in the prison setting and whether they warrant transferring a prisoner to another institution.
 
 
 17
 Lack had read the letter. His decision to initiate a disciplinary hearing was surely within his discretion. Bernhardt merely chaired the committee which decided, in accordance with a recommendation of the disciplinary board, that Warren should be transferred. We are at a loss to understand the claim that she thereby violated Warren's constitutional rights, let alone that a correctional official in her position would know that she was doing so.
 
 
 18
 Appellee has failed to show that the actions of the appellants were connected in any way, and appellee has failed to present sufficient evidence with respect to any individual appellant demonstrating that the appellant took action because appellee was engaged in protected activities.
 
 
 19
 Thus we find that the District Court erred in denying appellant's motion for summary judgment. Appellants were entitled to qualified immunity. Qualified immunity protects an official from monetary damages but not from injunctive relief. Hensley v. Wilson, 850 F.2d 269, 273 (6th Cir.1988). Appellee has sought injunctive relief in addition to monetary damages. Thus an award of summary judgment with respect to the injunctive relief sought would be improper.
 
 
 20
 Accordingly, we REVERSE the judgment of the District Court and REMAND this matter to the District Court for entry of an order consistent with this opinion.
 
 
 21
 COOK, District Judge, Dissenting.
 
 
 22
 It is with due respect for my colleagues, who believe that the district court judge erred when he denied the Appellants' motion for summary judgment, that I must submit this dissent.
 
 
 23
 Appellee, Thomas R. Warren, filed a pro se civil rights Complaint on February 24, 1986, alleging that the Appellants[1] had harassed, intimidated and ultimately taken disciplinary action against him in retaliation for his representation of inmates at disciplinary hearings and other "jailhouse lawyering" activities at the Middle Tennessee Reception Center (MTRC), a state correctional facility. He seeks monetary damages and injunctive relief.
 
 
 24
 Appellants filed a motion for summary judgment on March 7, 1988. In a report, which was entered on September 16, 1989, a Magistrate recommended that their request for summary judgment be granted on the basis of qualified immunity. However, on October 14, 1988, the district court rejected the Magistrate's report after concluding that factual issues were in dispute relative to the Appellants' motivations. Accordingly, the district court denied the motion and ordered discovery to continue.
 
 
 25
 Appellants filed a second motion for summary judgment on April 17, 1989 following the completion of discovery. Once again, they sought to obtain a judgment as a matter of law on the basis of qualified immunity. On September 28, 1989, the Magistrate issued another Report in which he recommended that
 
 
 26
 [Appellants'] motion for summary judgment be denied because there are material factual disputes about motivation on [Warren's] claim of retaliation for the exercise of his First Amendment rights.
 
 
 27
 (Report and Recommendation, September 28, 1989, at 2). On December 6, 1989, the District Court adopted the Report and Recommendation of the Magistrate and denied the Appellants' renewed application for summary judgment. Appellants filed a timely notice of appeal.[2]
 
 
 28
 * Warren is a state prisoner who served as an inmate advisor at the MTRC during 1985. He was also a member of the inmate council and became an active advocate for the legal rights of other inmates. Warren complains that the Appellants singled him out for disciplinary action and, ultimately, a transfer from the MTRC to a more restrictive facility in retaliation for his activities as an advocate within the prison complex.
 
 
 29
 In response to the Appellants' motion for summary judgment, Warren presented direct evidence of retaliatory treatment, such as harassment and intimidation that began several months before the disciplinary proceeding, which ultimately resulted in his transfer from the MTRC. However, the Appellants dispute this contention, asserting that the disciplinary action which they initiated against Warren was based solely upon a letter that he wrote to a woman who was employed as a clerk at the MTRC. According to Ronald B. McRady, the female employee showed him the letter a few days after her receipt of the Warren communication because she was disturbed by its contents. Warren was subsequently issued a disciplinary infraction for writing the letter.
 
 
 30
 Warren asserts that the Appellants did not follow the established institutional procedures for issuing infractions. Moreover, he alleges that this noncompliance with institutional procedures is inferential evidence that the Appellants' real motivation in issuing the disciplinary charge against him was in retaliation for his inter-facility activities as opposed to a form of punishment for writing the letter.
 
 
 31
 According to the policy at the MTRC, when a correctional officer witnesses an infraction of any disciplinary rule, he/she must immediately issue a disciplinary charge against the offending inmate. In this case, McRady did not issue a disciplinary charge against Warren after reading the letter, but elected to report the offense to Larry Lack. In turn, Lack referred the matter to his chief of internal affairs, Michael C. Tyler, and directed him to issue a disciplinary charge against Warren for disrespect and extortion.[3]
 
 
 32
 As a result of the extortion charge, Warren was terminated from his position as an inmate advisor and, thereafter, placed in a more restrictive housing unit pending the outcome of the disciplinary proceeding. At the disciplinary hearing, Warren admitted that he had written the letter, but denied having had any improper motives. Nevertheless, the disciplinary committee found him guilty of disrespect but not of extortion and recommended his transfer to another facility.
 
 
 33
 The Reclassification Board, chaired by Penny A. Bernhardt, followed the recommendation and transferred Warren to a County Work Camp. However, an official at the Work Camp determined that Warren was not eligible for placement at that facility and, accordingly, returned him to the MTRC. Upon his return to the MTRC, the Reclassification Board summarily reclassified him to the Turney Center.
 
 II
 
 34
 The question presented on this appeal is whether Warren had presented enough evidence to create a factual dispute regarding the motivation of the Appellants in this cause, considering the evidence in a light most favorable to him. As my colleagues have noted, Poe v. Haydon, 853 F.2d 418 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989), dictates that Warren may not rely solely upon circumstantial evidence, such as the allegation that he was treated differently from other inmates during and following his disciplinary hearing. If the district court had relied solely upon these allegations to deny summary judgment, I believe that a reversal would have been warranted. However, Warren did present direct evidence from fellow inmates who opined that the Appellants were motivated in their collective efforts to transfer him by their animosity for his legal activities.[4]
 
 
 35
 Another inmate at the MTRC, Ricki Reece, testified that he "heard Officer Smithson say that she was going to make sure Warren would never represent anyone else. Lt. Crutcher agreed that Warren should not be an inmate advisor at MTRC." (Reece Affidavit, para. 7, at 2). Reece also said:
 
 
 36
 [He] heard a large number of correctional officers and support staff inmates at MTRC discuss the matter. Both the officers and inmates expressed the opinion that Warren had been written up in order to transfer him from MTRC. The majority of these individuals stated they knew McRady had been trying to get rid of Warren for a long time and that Warren's legal assistance was a source of conflict for the administration.
 
 
 37
 (Reece Affidavit, para. 17, at 4).
 
 
 38
 Warren testified that McRady had warned him that "[he] was a troublemaker at MTRC with all [his] legal work and that [he] just wasn't going to make it there." (Warren Affidavit, para. 25, at 7). After being involved in organizing a meeting about various inmate grievances, "Bernhardt told [Warren] that ... McRady knew [that he] had composed the visitor grievance, and [Bernhardt] warned [him] that ... McRady meant to 'ship' [him] if [he] did not stop such activities." (Warren Affidavit, para. 30, at 8).
 
 
 39
 It is my belief that this represents a sufficiency of direct evidence to raise a question of a material fact regarding the motivations of the Appellants in disciplining and transferring Warren to deny their application of qualified immunity in this action. Although the majority has expressed the view that Warren has failed to present enough evidence that his activity as an inmate advocate was a motivating factor behind the Appellants' actions, I must disagree with this conclusion.
 
 
 40
 Indeed, there is no dispute that the Appellants' initial disciplinary action did not follow normal procedures or that their actions were unusual. This is evidenced by the fact that (1) this was the only instance in which the MTRC's Chief of Internal Affairs had charged an inmate for this type of offense, (2) although an investigation would have been normally conducted before a disciplinary report was issued, this did not occur in Warren's case, (3) contrary to prior institutional practice and procedure, a staff member had been directed to write the disciplinary report, (4) Warren's inmate advisor was warned by one of the Defendants not to take his case, and not allowed to investigate, and (5) no other inmate had been transferred to another facility for disrespect. Clearly, this set of facts constitute more than circumstantial evidence upon which to support Warren's claim, especially when viewed in a light that is most favorable to him. Moreover, when these facts are taken in conjunction with the other evidence that Warren submitted to the District Court regarding prior intimidation and harassment, it is my belief that the decision to deny the Appellant's application for summary judgment was correct.
 
 
 41
 Although my distinguished panelists opine that Warren is actually arguing that he (1) should not have been disciplined for having written the letter to the staff person, and (2) failed to present any evidence that there was any improper motive connected to his transfer, I strongly disagree. Warren's argument seems more accurately to be that the punishment which was imposed upon him was another instance of retaliation for his jail-house lawyering activities, and was used as a pretext by the Appellants to achieve their expressed goal of transferring him to another facility.
 
 
 42
 Thus, I believe that the district court's denial of the Appellants' motion for summary judgment was correct, and should be affirmed.
 
 
 
 *
 The Honorable Julian Abele Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 McRady explained that because Warren's job brought him in daily contact with the female MTRC officer, he was suspended from his job
 
 
 [2]
 Reichert sets forth the approach to be used in evaluating a case involving allegedly protected conduct:
 In Hildebrand [v. Board of Trustees of Michigan State University, 662 F.2d 439 (6th Cir.1981), cert. denied, 456 U.S. 910 (1982) ], this court set forth the proper approach in such cases in three steps:
 "(1) The threshold question is whether the plaintiff's conduct deserves constitutional protection....
 (2) If the court finds that an employee's conduct was protected by the first amendment, the finder of fact must determine whether [the action taken was] because he engaged in the protected conduct. The employee's protected conduct must be a "substantial factor" or a "motivating factor" in the employer's decision....
 (3) Once the employee meets this burden [as outlined in 2 above] the burden is on the employer to prove that the actions the employee is complaining about would have taken place absent the protected conduct."
 Reichert, 701 F.2d at 1170 (quoting Hildebrand v. Board of Trustees of Michigan State University, 662 F.2d 439, 442-43 (6th Cir.1981), cert. denied, 456 U.S. 910 (1982)).
 
 
 [1]
 Warren has identified the Appellants as officials at the Middle Tennessee Reception Center (MTRC): Larry Lack (Warden); Ronald B. McRady (Associate Warden); Penny A. Bernhardt (Associate Warden); and Dennis Talley (Correction Corporal)
 
 
 [2]
 An immediate interlocutory appeal lies from a denial of a motion which is based upon the qualified immunity doctrine. Mitchell v. Forsyth, 472 U.S. 511 (1985); Kennedy v. Cleveland, 797 F.2d 297, 299-300 (6th Cir.1986), cert. denied sub nom. Hanton v. Kennedy, 479 U.S. 1103 (1987)
 
 
 [3]
 Disrespect is a Class C violation, which is a minor disciplinary offense. A more serious offense is extortion, a Class B violation
 
 
 [4]
 Much of the evidence relied upon by Warren may be inadmissible as hearsay. In Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), the Court stated:
 We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose [his] own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves....
 (Ling Affidavit para. 12, at 3).