Leading Non-Hispanic Candidate
Leading Hispanic Candidate

---

## ORDER OF DISMISSAL

In accordance with the Court's Memorandum and Opinion of even date, this action is DISMISSED.

Dennis DUBUC, Plaintiff,

v.

**GREEN OAK TOWNSHIP, Green Oak Township Zoning Board of Appeals, Dale Brewer, Raymond Clevenger, and Michael Vallie, in their individual and official capacities, Jointly and Severally, Defendants.**

Civ.A.No. 91–CV–40238–FL.

United States District Court,
E.D. Michigan.

March 25, 1997.

Hugh M. Davis, Jr., Detroit, MI, for Plaintiff.

Owen J. Cummings, Livonia, MI, Raymond Clevenger, Ann Arbor, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

Before the Court are cross motions for summary judgment and a motion by plaintiff for enlargement of time in which to substitute the Estate of Michael Vallie for that deceased party. The Court has been fully briefed on the matters relevant to these motions and, pursuant to Fed.R.Civ.P. 78 and ED. Mich. LR 7.1(e)(2), oral argument is dispensed with as unnecessary. Through his summary judgment motion (D.E.# 134), plaintiff Dennis Dubuc seeks partial summary judgment on the issue of liability regarding his § 1983 claims for violation of his First and Fourteenth Amendment rights. In their motion (D.E.# 135), defendants seek summary judgment and dismissal of plaintiff's claims. For the reasons that follow, plaintiff's summary judgment motion is DENIED, plaintiff's motion for enlargement of time (D.E.# 137) is GRANTED, and defendants' summary judgment motion is GRANTED IN PART and DENIED IN PART.

### I. Background

This civil rights action, brought pursuant to 42 U.S.C. § 1983, arises out of plaintiff's attempts to develop property located in Green Oak Township, Livingston County, Michigan. Factually, plaintiff's claim has a dual focus: (1) his attempt to obtain a lot split on a specific parcel of property; and (2) his contemporaneous and subsequent attempts to improve buildings and to develop both the above-identified property and parcels adjacent thereto. Plaintiff claims that defendants have impeded and thwarted his property development in retaliation against him for speaking out against and criticizing defendants in the press and for pursuing legal relief in the state courts and from the State Bureau of Construction Codes. Complicating this matter is the ongoing history of state court litigation involving the development of these properties, which ironically has given breath to both plaintiff's constitutional claims and to defendants' main defense thereto.

On two occasions in the mid to late 1980s, plaintiff took legal action against defendant Green Oak Township in an effort to develop his property. First, plaintiff brought suit in state court to compel the township to allow him to develop the property commercially, with variances from the recently adopted residential zoning classification of that lot. The case was resolved by a consent decree which allowed plaintiff to develop his property for light industrial use with various restrictions both specific and general. Later, having difficulty working through the Green Oak Township building officials, plaintiff complained to the state Construction Code Commission. The subsequent investigation resulted in corrective action taken against the township and a reorganization of the township zoning and building departments. Ironically, defendants also rely upon this reorganization as a pivotal moment in which the township revamped their building ordinances and began to apply them more stringently.

In more recent state court litigation, the Livingston County Circuit Court refused to compel defendant Township to issue a certificate of occupancy to plaintiff and found that defendants had legally applied the local zoning ordinances to plaintiff's attempted development. The court further found plaintiff to have acted in contempt of its orders and ordered him to vacate the premises. The latest findings form part of the basis for defendants' motion, in which they argue that their conduct was found to be lawful and that the present lawsuit should be dismissed on *res judicata* grounds. As addressed further herein, the Court disagrees and finds that merely because defendants' actions were pursuant to local ordinance does not insulate them from liability if their actions were taken in retaliation for plaintiff's exercise of his constitutional rights.

### II. *Summary Judgment Standard*

· The present issues are raised before the Court on cross-motions for summary judgment. Summary judgment should be granted only when, considered in the light most favorable to the non–moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Lib-*

*erty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non–moving party, there is no 'genuine issue' for trial." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989), *citing Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. *Plaintiff's Motion*

Plaintiff's claims arise under § 1983, which provides a civil cause of action to anyone who suffers deprivation of federal rights at the hands of state or federal officials acting under color of law. 42 U.S.C. § 1983. Plaintiff asserts claims for violation of his civil rights as secured by the First and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that defendants have engaged in harassment against him in retaliation for the previous lawsuits filed by him and for various comments made to the press. Plaintiff claims that this retaliatory conduct is in violation of his First Amendment rights to free access to the courts and freedom of speech. Plaintiff also claims that through their conduct defendants have singled him out for individual adverse treatment in violation of his Fourteenth Amendment right to equal protection under the laws.

In a footnote, plaintiff also suggests that he may have a separate claim for a substantive due process violation by virtue of defendant's deliberate, arbitrary governmental action. As noted by plaintiff, however, the Court has ruled previously in this case that where the allegations indicate deprivation of an enumerated constitutional right any claim that the activity also violates substantive due process is redundant and the due process claim is subsumed within the more specific

claim. This ruling is the law of the case and, moreover, is still the opinion of the Court.

## A. *First Amendment Claim*

It is well settled law that retaliation by government officials against persons for exercising their First Amendment rights is itself a violation of the First Amendment. *Zilich v. Longo,* 34 F.3d 359, 364 (6th Cir. 1994); *Reichert v. Draud,* 701 F.2d 1168, 1170 (6th Cir.1983). In prosecuting such a claim, the plaintiff has the burden of establishing that he engaged in conduct protected by the First Amendment and that such protected conduct was a substantial or motivating factor behind the defendant's actions. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Reichert,* 701 F.2d at 1170. No liability will attach, however, if the defendant can establish by a preponderance of the evidence that he would likely have acted as he did even in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Reichert,* 701 F.2d at 1170.

In support of this claim, plaintiff proffers undisputed evidence that he engaged in various activities protected by the First Amendment. Specifically, plaintiff alleges that the actions taken by him which provoked retaliation by defendants were:

his successful lawsuit against the Township, concluded in 1986, and then later [2] his complaints that prompted performance evaluations to be conducted · of the Township Building Department by the State of Michigan, evaluations that were negative to the Township.... [3] Dubuc also criticized the Township and its officials, including the Township attorney, in newspaper articles and in public forums. These are quintessential First Amendment actions.

(Plaintiff's motion brief at 3 (footnote omitted)).

Plaintiff further alleges that defendants took action adverse to him and that plaintiff's prior, protected conduct was a substantial or motivating factor leading to the alleged retaliatory action. Plaintiff relies upon alleged acknowledgment by the Township, "through [its] officials/agents," that it withdrew governmental services from plaintiff and that its relationship with plaintiff had degenerated into a personal conflict, as implicit evidence of the retaliatory and malicious character of defendants' actions (plaintiff's motion brief at 3).

As indicated above, it is undisputed that plaintiff engaged in conduct protected by the First Amendment. Plaintiff also has proffered evidence that he has been treated adversely by some of the defendants and that some of them were motivated by ill–will. In their defense, defendants assert that they acted pursuant to Township ordinances and treated plaintiff differently only because of the reality that he may be prone to litigate over any mistakes or perceived injustices that might occur in their dealings with him. Defendants' evidence may support both their denial of acting with retaliatory intent and their affirmative defense that they would have acted the same even absent any such illicit motivation.

After consideration of all the evidence before the Court, it is clear that even in the light most favorable to plaintiff there are questions of fact regarding the various defendants' motivations and whether these individuals and public entities would have acted as they did absent any retaliatory animus. Moreover, while summary judgment may be appropriate to various defendants regarding whom evidence of illicit motive is lacking (*see* discussion of defendants' motion, *infra*) there are genuine issues of material fact which preclude summary judgment to either party regarding the majority of defendants. Thus, with regard to plaintiff's First Amendment claim, plaintiff's motion for summary judgment must be DENIED.

## B. *Fourteenth Amendment Claim*

The Equal Protection clause of the Fourteenth Amendment declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. "The Equal Protection clause requires that a state and its subdivisions apply its legislation and actions evenhandedly to all persons similarly situated in a designated class." *Guarino v. Brookfield Twp. Trustees,* 980 F.2d 399, 410 (6th

Cir.1992), *citing Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). In enacting legislation, a government entity may treat individuals differently if such treatment is "rationally related to the achievement of a legitimate state interest, unless such differing treatment interferes with the exercise of a fundamental constitutional right or operates to the peculiar disadvantage of a 'suspect' class...." *Id.* Where the differing treatment impinges upon a fundamental right or disadvantages a suspect class, such governmental conduct is subjected to a heightened level of scrutiny and will be sustained only if "suitably tailored to serve a compelling state interest." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

■ Where the equal protection challenge focuses upon the allegedly unequal enforcement of otherwise valid legislation or regulations, the analysis is whether the selective enforcement amounts to " 'purposeful discrimination' intended to accomplish some forbidden aim." *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir.1996). Aims that are forbidden for purposes of a selective enforcement action under § 1983 include "arbitrary classifications" such as those based upon race, nationality, religion or gender, and the intentional discouragement or punishment of individuals for their exercise of a constitutionally protected right, "especially the right to criticize the government." *Id.* at 1057. In an action challenging the latter form of conduct, the plaintiff must prove intent to deter or punish for engaging in the protected activity, "rather than intent to concentrate limited resources on the most notorious or easy to locate violators." *Id.* It must be remembered that " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" if "the selection was [not] deliberately based upon an unjustifiable standard.' " *Id.* at 1056 (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

■ In support of his Fourteenth Amendment claim, plaintiff argues that defendants treated him differently than other township residents, in effect treating him as an arbitrary "class of one," by strictly enforcing ordinances against him in retaliation for exercise of his First Amendment rights (as discussed *supra*) and without a rational relation to a legitimate governmental purpose. Plaintiff further alleges that the Township treats him differently than other similarly situated individuals and has pursued a policy of "no action" and "denial of governmental services" with respect to him alone. Plaintiff does not claim that defendants' treatment of him has interfered with the exercise of a constitutional right, but rather that defendants have singled him out for disparate treatment for his past exercise of protected rights.

In support of his claim, plaintiff relies upon analogous cases out of the First and Seventh United States Circuit Courts of Appeals. In *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), the plaintiff, owner of a liquor store in Naperville, Illinois, claimed a violation of his equal protection rights through a campaign of harassment by the city's mayor. The plaintiff alleged that the defendant repeatedly attempted to deny him his liquor licences and caused the Naperville police to harass him at every opportunity. This "campaign of vengeance" allegedly was in retaliation for the plaintiff's past success in having a liquor licence revocation reduced to a brief suspension by the state liquor control commission, the plaintiff's advertising campaign against the sale of liquor to minors, and the plaintiff's prior withdrawal of political and financial support from the mayor. While the plaintiff did not pursue a First Amendment retaliation claim, he did challenge the mayor's actions as a denial of his Fourteenth Amendment right to equal protection. *Id.* at 178.

In an opinion authored by Judge Richard Posner, the Seventh Circuit acknowledged the plaintiff's § 1983 claim as arising under the Fourteenth Amendment. The court first distinguished Esmail's claim from the two most common types of equal protection cases: "One involves charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment.... The other, which rarely succeeds nowadays, involves challenges to laws or policies alleged

to make irrational distinctions." *Id.* (citations omitted).

The court determined that Esmail's claim fit into neither of these common types of equal protection cases. As the court summarized: "[t]he charge here is that a powerful public official picked on a person out of sheer vindictiveness.... He is complaining about an orchestrated campaign of official harassment directed against him out of sheer malice." *Id.* at 178, 179. The court explained that equal protection does not require government to treat all identically situated individuals identically, but prohibits unequal treatment which is solely the result of vindictiveness. *Id.* at 179. In other words, unequal treatment does not necessarily violate equal protection, except when the distinctive treatment has no rational relation to a legitimate government interest—such as when the disparity is the result of vindictiveness.

The Seventh Circuit's opinion in *Esmail* also lends credence to plaintiff's equal protection theory that he has been singled out as an illegitimate class of one. *Id.* at 180. Judge Posner reasoned that:

... neither in terms nor in interpretation is the [Equal Protection] clause limited to protecting members of identifiable groups. It has long been understood to provide a kind of last-ditch protection against governmental action wholly impossible to relate to legitimate governmental objectives....

\*   \*   \*

A class of one is likely to be the most vulnerable of all, and we do not understand therefore why its should be denied the protection of the equal protection clause.

*Id.*

Similarly, in *Rubinovitz v. Rogato,* 60 F.3d 906 (1st Cir.1995), the plaintiffs alleged violation of their equal protection rights through the *selective enforcement of various building regulations* by local government officials. The plaintiffs claimed that they had been singled out for disparate treatment in retaliation for their eviction of a tenant who was a friend of one of the defendants and for exercise of their free speech rights in writing a letter of complaint to a local municipal official.

The First Circuit reiterated the requirements for pursuing an equal protection claim:

"Liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person.*"

*Id.* at 909–10 (quoting *Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989) (emphasis added). As in the present matter, the plaintiffs in *Rubinovitz* alleged selective enforcement of local building regulations which was in response to the plaintiffs' exercise of their free speech rights and constituted malicious or bad faith intent to injure. *Id.* at 910. While the First Circuit found insufficient evidence for the plaintiffs to survive summary judgment on their First Amendment retaliation theory, the court remanded for trial on the plaintiffs' claim that they received differing treatment due solely to the defendants' bad faith or malicious intent to injure. *Id.* at 911.

Unfortunately for plaintiff, the theories underlying both these cases has recently been repudiated by the Sixth Circuit. In *Futernick v. Sumpter Twp., supra,* a mobile home park owner sued state and local officials under § 1983, alleging violation of his equal protection rights. The plaintiff accused the defendants of selective enforcement of state environmental regulations against him purely out of malice and personal animosity toward him. The Sixth Circuit rejected the claim, holding that equal protection is not violated merely because an otherwise legal zoning ordinance is applied out of malice or bad intent. 78 F.3d at 1058. Moreover, the court has taken the position that equal protection prohibits selective enforcement only against arbitrary classifications of groups of individuals, not against any particular individual. *Id.* The *Futernick* court specifically held that

... the sundry motivations of local regulators should *not* be policed by the Equal Protection Clause of the United States Constitution, absent the intent to harm a protected group or punish the exercise of a fundamental right.

*Id.*

In the case at bar, plaintiff has stated a claim and proffered evidence that certain of the defendants treated him differently than similarly situated individuals and that this disparate treatment was the result of retaliation and animosity toward him personally. To the extent that plaintiff claims protection as a group or illegitimate classification, alleging the withdrawal of governmental services to him solely because he is Dennis Dubuc, his claim must be DISMISSED. Similarly, as the Sixth Circuit specifically has rejected the notion that disparate treatment based upon malice or personal animosity states an equal protection violation, that claim too must be DISMISSED.

■ Remaining is plaintiff's claim that he was treated differently than similarly situated individuals based upon his prior exercise of rights protected under the First Amendment. To establish the claim, plaintiff must prove that each individual defendant's action was intended to deter or punish him from engaging in activity protected by the First Amendment. As indicated previously under discussion of plaintiff's First Amendment claim, plaintiff has proffered evidence that could support a finding of retaliatory intent. Also as indicated previously, defendants take the position that their actions have been justified by the circumstances and are supported by local ordinance.[1] While the evidence of record is sufficient to proceed to trial, there are many factual questions left for resolution. Thus, plaintiff's motion for summary judgment must be DENIED.

### C. *Municipal Liability*

■ To establish § 1983 liability against Green Oak Township, as a governmental entity, plaintiff must prove that he sustained injury which is attributable to a policy or custom of the Township. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 1004 (6th Cir.1994). For purposes of § 1983 liability, municipal policy may be made only by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. To carry his burden of proof, plaintiff must (1) identify a municipal policy, (2) establish that the governmental entity is responsible for promulgating the policy, and (3) show that execution of the policy caused plaintiff's injury. *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987).

Significantly, plaintiff has moved for summary judgment on this issue while defendants have not. While the Court finds that there is evidence that might support a finding at trial that plaintiff's constitutional rights were violated through a policy or custom of defendant Green Oak Township, in the light most favorable to defendants the Court also finds that plaintiff has not proven his case at this time. Therefore, to the extent that plaintiff seeks summary judgment on this issue, the motion is DENIED.

### IV. *Defendants' Motion*

Defendants' motion begins with a recitation of the facts underlying this action as well as the procedural background of this case related to matters pending in the state courts.[2] Defendants' legal argument begins at page fifteen of their motion brief and presents various reasons for which defendants seek summary judgment and dismissal of plaintiff's claims. The Court will address

---

1. Essentially, plaintiff's remaining constitutional claims will rely upon the same set of proofs and defendants will proffer the same evidence in support of their denials and affirmative defenses. As a tactical matter, plaintiff will have to determine whether to pursue both claims at the risk of confusing the issues at trial. Plaintiff shall indicate his intention in the Joint Final Pretrial Order.

2. *See* defendants' motion brief at 1–15.

the issues raised as they are applied to the various defendants to this action.

## A. *Dale Brewer*

■ At the time of the events giving rise to this lawsuit, defendant Dale Brewer was the Supervisor of Green Oak Township and plaintiff has brought suit against him both as an individual and in his official capacity. In their motion, defendants argue that Brewer had very little involvement in the underlying zoning dispute and when he did act his actions were not improper. Defendants assert that Brewer's actions were taken in accordance with all controlling local ordinances and that there is absolutely no evidence of malicious or retaliatory intent on his part.

Defendants argue that Brewer's actions were taken pursuant to Land Division Ordinance No. 77, which required him to contact various department heads for their input regarding the proposed division of plaintiff's fully developed property. They suggest that any delay in Brewer's processing of the lot split request was occasioned by the complexity of the matter and the necessity of his contacting the various other township officials. Specifically, Brewer testified by affidavit that because the property was almost fully developed at the time of the lot split request, a lot split would require several easements and variances from various township zoning regulations (Brewer Affidavit, defendant's motion at exh. 2). Moreover, because of plaintiff's history of litigation with the township and the existing lawsuits regarding development of the subject property, defendant Brewer felt compelled to consult the township attorney, defendant Raymond Clevenger, before taking final action on plaintiff's lot split request (*id.*). Brewer further attested that after his administrative denial of plaintiff's lot split request he took no further action relative to any of the matters giving rise to this lawsuit except to the extent that he was compelled by the Zoning Board of Appeals ("ZBA") to attend their hearings on plaintiff's appeal (*id.*).

Defendants argue that the timing of actions taken by the ZBA, requests for plaintiff to take additional action, and the final action of the ZBA were taken solely by that body without input from Brewer. Indeed, defendants have asserted since the commencement of this action that the actual delay of the lot split decision was caused by plaintiff's failure to provide the necessary site plans as requested by the ZBA.

Finally, defendants note that in all of plaintiff's claims of retaliation and harassment, plaintiff does not mention any wrongful conduct on the part of Brewer. Indeed, the Court notes that in plaintiff's response brief he fails to mention Brewer at all, and in his response he makes but one reference to Brewer and that is only to indicate plaintiff's contention that the reasons underlying Brewer's actions remain to be adjudicated at trial (plaintiff's response at 3).

The Court finds that even viewed in the light most favorable to plaintiff, there is insufficient evidence to present at trial a genuine issue of material fact regarding improper motive on behalf of Dale Brewer. While there is evidence that the ZBA may have treated plaintiff differently than other township residents or that Clevenger may have acted with retaliatory animus, there is *no* such evidence against Brewer.

Plaintiff argues in his motion that the township supervisor (Dale Brewer) cannot use a "he made me do it" defense. It is true that Brewer cannot avoid civil liability under § 1983 merely by saying that township attorney Clevenger was the moving force behind his official acts. But this is not Brewer's defense. Brewer contends that he did nothing improper and that any delay in his decision was due to his diligence in obtaining the opinion of the township attorney, among others.

In fact, the time between plaintiff's administrative request for a lot split and Brewer's rejection thereof was forty–five days. One cannot infer any unlawful motive from the length of Brewer's consideration of the request. Moreover, while plaintiff asserts that the question of Brewer's motivation is an issue for resolution at trial, plaintiff presents no evidence to rebut Brewer's affidavit that he acted without retaliatory intent. Quite simply, plaintiff has failed to proffer evidence to support his claim against Brewer that he

took action in retaliation for plaintiff's exercise of his First Amendment rights.

Plaintiff cites to a previous opinion in which the Court found that:

> [P]laintiff has pled with specificity that defendants' delay in reaching a final determination on plaintiff's lot split request was in retaliation for plaintiff's exercise of his first amendment rights. Although defendants have proffered reasons that, if true, would justify their actions, plaintiff has alleged an unconstitutional motive that would be an acceptable inference from the facts alleged, viewed in the light most favorable to plaintiff. This issue of fact is one that must be resolved by the trier of fact. Therefore, summary judgment upon this issue is not appropriate at this time.

*Dubuc v. Green Oak Twp.*, 810 F.Supp. 867, 872 (E.D.Mich.1992). Plaintiff argues that this ruling establishes the necessity of trial on the issue of motive relative to all the defendants. This contention is faulty, however, to the extent that it takes the above-quoted ruling out of context.

In their motion, defendants argue generally that plaintiff has failed to demonstrate that the defendants acted with retaliatory animus and that, in fact, defendants have been vindicated by Judge Burress' ruling that the requirements imposed upon plaintiff were authorized by township ordinance. In addition, defendants argue specifically that Brewer acted appropriately and proffer his affidavit in support of his lawful intentions.

In response to defendants' motion and in his own motion, plaintiff also argues generally that the defendants acted with retaliatory intent. And while plaintiff proffers substantial evidence regarding Clevenger's motivation, he has failed to present evidence that Brewer acted with impermissible intent or even that his action was tainted by Clevenger's alleged retaliatory animus. Thus, plaintiff fails to support the first requirement of the *Mt. Healthy* analysis that defendant Brewer acted in retaliation for plaintiff's prior resort to the Michigan courts or to the state administrative processes or for plaintiff's statements to the press. There is insuf-

ficient evidence that such protected conduct was a substantial or motivating factor behind Brewer's conduct.[3]

Defendants' motion for summary judgment as to defendant Dale Brewer is GRANTED. All claims against defendant Brewer both as an individual and in his official capacity as Green Oak Township Supervisor are HEREBY DISMISSED.

### V. *Michael Vallie*

█ On September 25, 1995, defendants filed a Suggestion of Death indicating that defendant Michael Vallie, township building inspector, died on July 17, 1995. Pursuant to Fed.R.Civ.P. 25, plaintiff was entitled to move for substitution of an appropriate party within ninety days after the Suggestion of Death was entered on the record. Fed. R.Civ.P. 25(a)(1). Absent timely substitution, Rule 25 requires that "the action shall be dismissed as to the deceased party." *Id.* As part of their present motion, defendants seek dismissal of Michael Vallie as a defendant to this action. In response to defendants' motion, plaintiff has filed a motion for enlargement of time in which to substitute the Estate of Michael Vallie in his place (D.E.# 137).

█ The death of parties sued in their official capacity, however, does not require substitution by motion but rather substitution is automatic. Fed.R.Civ.P. 25(d)(1). Thus, at the outset the Court notes that the Green Oak Township building inspector is still a party defendant to this lawsuit in his or her official capacity. Whether the court should allow substitution of Michael Vallie's Estate is a different matter.

Plaintiff failed to move for substitution within the ninety days provided by Rule 25(a)(1). In plaintiff's motion for enlargement of time, he seeks to do so now under Rule 6(b)(2). Rule 6(b)(2) provides that:

> When by these rules ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be

---

**3.** This also is a required element under plaintiff's    equal protection claim.

done where the failure to act was the result of excusable neglect . . . Fed.R.Civ.P. 6(b)(2). Plaintiff argues that his counsel's failure to move for substitution in the required period of time was a result of excusable neglect and that allowing him to do so at this time will not cause undue prejudice either to the Estate of Michael Vallie or to any of the parties hereto.

Excusable neglect under Rule 6(b) is a somewhat "elastic concept" and encompasses error caused by inadvertence, mistake or carelessness. *See Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 388, 390, 113 S.Ct. 1489, 1495, 1496, 123 L.Ed.2d 74 (1993) (indicating common sense meaning of term "neglect" to be applied liberally under Bankruptcy Rule 9006(b)(1), just as under Fed.R.Civ.P. 6(b)).[4] The Supreme Court found the determination of what neglect is excusable to be an equitable one, "taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. Factors to consider include the danger of prejudice, the length of delay and its potential impact on judicial proceedings, the reason for the delay and whether it was within the movant's reasonable control, and whether the movant acted in good faith. *Id.*

Plaintiff asserts that there would be no prejudice should the Court allow late substitution of Michael Vallie's Estate. Plaintiff argues that any liability for damages attributable to Vallie would be satisfied through indemnification or insurance and thus would have no impact on the value of his estate. Plaintiff further argues that substitution would not cause any delay of this action nor would it have any negative affect on the management of these proceedings. Finally, plaintiff's counsel testifies by affidavit that although he had actual knowledge of Vallie's death he does not recall receiving any documentary evidence thereof, including service of the Suggestion of Death. Counsel does not dismiss the possibility, however, that the Suggestion was served at his office and mis-

filed or lost among the multitude of pleadings which comprise the plaintiff's various pending legal matters.

Defendants oppose substitution at this time, arguing that plaintiff has failed to show *excusable* neglect as required under Rule 6(b)(2). Defendants emphasize that plaintiff and his counsel had *actual* notice as early as July 17, 1995. The Suggestion of Death was filed on September 25, 1995 and was properly served on plaintiff through his counsel. Defendants implicitly argue that the failure to move for substitution within ninety days after receiving official notice and over eight-and-a-half months after actual notice is more than simple inadvertence and such neglect is *not* excusable. Finally, defendants claim that the estate would suffer prejudice because upon his death Michael Vallie left no estate. Thus, substitution would require costs associated with the opening of an estate.

Initially, the Court finds that plaintiff's counsel's conduct falls squarely within the ordinary meaning of the term neglect: "to leave undone or unattended to esp[ecially] through carelessness." Webster's Ninth New Collegiate Dictionary 791 (1983). Whether such neglect is excusable depends upon consideration of the various equitable factors applied by the Supreme Court in *Pioneer. See id.,* 507 U.S. at 395, 113 S.Ct. at 1498.

The Court finds that any prejudice to the Estate is not enhanced by the untimely request for substitution, nor by substitution at this time. Defendants argue simply that substitution of Vallie's Estate will result in the opening of a new estate. Any inconvenience or expense incurred in so doing would have been sustained even with substitution soon after the time of death since an estate was not otherwise necessary. Moreover, because the estate would exist solely for purposes of this action there would be no prejudice to anyone otherwise entitled to any proceeds of an estate. Finally, while

---

4. Although *Pioneer* considered the meaning of "excusable neglect" under Bankruptcy rule 9006(b)(1), the Court indicated that the Sixth Circuit, among others, recognizes that excusable neglect under Fed.R.Civ.P. 6(b) extends to inad-vertent delays as well as delays beyond a party's control. 507 U.S. at 390, 113 S.Ct. at 1496, *citing Hill v. Marshall,* No. 86–3987, 1988 WL 117163 at *2, 1988 U.S.App. LEXIS 14742 at *4 (6th Cir., Nov. 4, 1988) (unpublished).

the court does not deem it relevant to the present inquiry to consider whether the estate would be indemnified or insured against an finding of liability, that fact—if true— would limit the adverse consequences to anyone with a stake in an existing estate.

Furthermore, while the neglect certainly was the fault of plaintiff's counsel, the Court does not anticipate substitution will result in delay of this matter. And given that the tardiness in moving for substitution achieves no benefit to plaintiff, the Court finds upon counsel's affidavit that neglect in this instance was made inadvertently and in good faith.

Therefore, pursuant to Rule 6(b)(2), the Court finds that plaintiff's failure to timely move for substitution was the result of excusable neglect, and plaintiff shall be allowed to so move at this time. Plaintiff's motion for enlargement of time (D.E.# 137) is GRANTED and plaintiff shall make the appropriate substitution forthwith. To the extent that defendants seek dismissal of Michael Vallie for plaintiff's failure to timely move for substitution, the motion is DENIED.

## VI. *Other Defendants*

Defendants make various arguments as to why plaintiff's claims should be dismissed against the remaining defendants. Defendants state that Green Oak Township is only mentioned once in plaintiff's Amended Complaint. Defendants do not make any persuasive argument, however, as to why plaintiff cannot possibly prove that the Township is liable under § 1983 for a policy or custom through which the individual defendants or the ZBA may have acted resulting in deprivation of plaintiff's constitutional rights (i.e., through retaliation for exercise of First Amendment rights). Moreover, defendants admit that a decision of the ZBA is a final decision of the Township. Thus, should plaintiff prove the ZBA to have acted out of retaliation against plaintiff—even if the retaliatory animus was effected though the influence of one of the individual defendants and not emanating from one of the board members—the Township might be liable. Thus, dismissal of the Township is unwarranted at this time.

Defendants argue that "the ZBA acted expeditiously and was hindered only by the Plaintiff's failure to provide adequate site plans, Plaintiff's delay in excess of three months to supply any information to the ZBA and the failure by the Plaintiff to articulate the necessary variances required from the ZBA to validate a land division request" (defendants' motion brief at 12). This, of course, is a factual argument. Whether the delay was caused by plaintiff or by the ZBA or by the township attorney and whether such delay was motivated by retaliatory animus are questions of fact for resolution at trial. Summary judgment would be inappropriate.

According to defendants, at all times relevant to plaintiff's claims, Raymond Clevenger was acting in his capacity as the township attorney and all allegedly wrongful acts were taken in defending the Township in litigation. This also raises questions of fact. Moreover, defendants do not make any argument as to why, even if true, Clevenger's acting within the scope of his employment would shield him from liability if he acted with retaliatory animus.

Similarly, defendants argue that Michael Vallie acted at all times consistently with the orders of the Livingston County Circuit Court and the regulations of the State Building Code and township ordinances. This too presents a question of fact. Plaintiff has presented evidence that may support a finding that Vallie acted out of his own animosity toward plaintiff or as a result of the township attorney's instructions. If either of these persons was influenced by retaliatory animus, then plaintiff may prove them liable at trial.

## VII. *Qualified Immunity*

■ Defendants make the argument that plaintiff's claims should be dismissed because defendants are shielded from suit by qualified immunity. In defense of a claim brought pursuant to 42 U.S.C. § 1983, a state official exercising discretionary authority is entitled to immunity from suit except where the state actor's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457

U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mackey v. Dyke*, 29 F.3d 1086, 1093–94 (6th Cir.1994). In performing this analysis, the Court must focus on the objective legal reasonableness of the official's actions in light of the legal rules which were "clearly established" at the time of the actions in question. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In doing so, the Court is not to look at broad, generalized statements of rights, but must consider the rights in a more particularized sense.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted); *see also, Mackey*, 29 F.3d at 1094. "The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged action." *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir.1988) (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039).

"[T]he law is well settled ... that retaliation under color of law for the exercise of First Amendment rights is unconstitutional...." *Zilich*, 34 F.3d at 365. Retaliation for the exercise of free speech was recognized and clearly established as a constitutional violation at the time of defendants' actions complained of herein. *See Walje v. City of Winchester, Ky.*, 773 F.2d 729, 732 (6th Cir.1985). Moreover, several circuit courts of appeals have held that "'state officials may not take retaliatory action against an individual designed ... to punish him for having exercised his constitutional right to seek judicial relief....'" *Graham v. National Collegiate Athletic Assoc.*, 804 F.2d 953, 959 (6th Cir.1986) (citations omitted). Thus, at the time of defendants' allegedly retaliatory conduct, plaintiff had a clearly established right to be free from retaliation

for exercise of his First Amendment rights. Reasonable persons in defendants' positions would have realized that to take retaliatory action would be in violation of plaintiff's constitutional rights. Of course any official acting without retaliatory intent will be held harmless at trial under both First and Fourteenth Amendment claims.

### VIII. Claim Preclusion and Issue Preclusion

Defendants argue that as a result of prior orders of this Court and the Livingston County Circuit Court the allegations made in paragraphs 49–78 of plaintiff's Amended Complaint are outside this Court's jurisdiction or have already been adjudicated to plaintiff's disadvantage. The Court disagrees.

In its January 31, 1996 Order, the Court held that plaintiff's request for injunctive relief was outside the Court's jurisdiction because it was merely an attempt to attack collaterally the various orders of the Livingston County Circuit Court. *See* Memorandum Opinion and Order of January 31, 1996 (D.E.# 129) The Court held that whether plaintiff was entitled to a certificate of occupancy, whether defendants acted within their authority, and whether the state court injunctions and sanctions were appropriate were state matters. Whether defendants acted in retaliation of plaintiff's exercise of his constitutionally protected rights is the subject of this lawsuit and was not addressed in the state court litigation.

While some of defendants' actions may have been authorized by law, as found by Judge Burress, that is not an absolute defense to plaintiff's retaliation claims. Even when a state actor is authorized to take some action, he may be subject to liability if he takes that action with improper motive or intent. *Mt. Healthy*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75. "'[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.'" *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir.1990)(quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct.

1234, 59 L.Ed.2d 466 (1979)); *Warmus v. Hank,* 1995 WL 82061 at * 5 (6th Cir. Feb. 28, 1995). Thus, defendants' motion must be DENIED on this issue.

### IX. *Disposition*

For the foregoing reasons, plaintiff's summary judgment motion (D.E.# 134) is DENIED, plaintiff's motion for enlargement of time (D.E.# 137) is GRANTED, and defendants' motion for summary judgment (D.E.# 135) is GRANTED IN PART and DENIED IN PART. Green Oak Township Supervisor Dale Brewer is DISMISSED as a defendant in both his individual and official capacities. Plaintiff's remaining claims arise under the First and Fourteenth Amendments for retaliation against him for exercising his First Amendment rights. Within fifteen days of the date hereof, plaintiff may move to substitute the Estate of Michael Vallie in the place of Michael Vallie. A Final Pretrial Conference and Trial dates shall be scheduled by the Court.

SO ORDERED.