**Rodney HEATON and Margaret Heaton, Plaintiffs,**

v.

**CITY OF PRINCETON, et al., Defendants.**

No. Civ.A. 5:96–CV–139(R).

United States District Court, W.D. Kentucky, Paducah Division.

Sept. 16, 1997.

Order Denying Reconsideration, Oct. 10, 1997.

Richard L. Walter, Boehl, Stopher & Graves, Paducah, KY, for plaintiffs.

Joseph C. Baker, Wells, Baker & Wetzel, Princeton, KY, Norman Elloitt Harned, Harned, Bachert & Denton, Bowling Green, KY, for defendants.

## MEMORANDUM OPINION

RUSSELL, District Judge.

This matter is before the court upon defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the defendants' motion for Summary Judgment is GRANTED.

### FACTS AND CLAIMS

Plaintiffs Rodney and Margaret Heaton have brought suit against the City of Princeton, Kentucky, the City Council of the City of Princeton, the Planning and Zoning Commission and the various individual members of those entities. Beginning in 1989 and continuing through 1991, plaintiffs purchased several tracts of land in the city of Princeton [hereinafter referred to as "Heaton Highway 91 Project"]. On July 17, 1989, the City Council passed an ordinance entitled "Storm Water Management and Control." This ordinance required that "storm water falling on a given site shall be absorbed or retained onsite to the extent that after development the rate of water leaving the site shall not be significantly different than if the site had remained undeveloped." Ordinance No. 7–3–89, Section III(A)(1).

In 1994 or 1995, plaintiffs sold a portion of this land on which a Bowling Alley was built. Plaintiffs also built a restaurant which was later sold. Plaintiffs subsequently purchased additional adjoining property to build a convenience store and gas station. Plaintiffs first became aware of the Storm Water Management and Control ordinance when they applied for a building permit for the convenience store and gas station. Plaintiff Mr. Heaton was informed by Diane Knox, who was the City of Princeton Zoning Administrator, that he should hire an engineer to comply with the necessary ordinances. Plaintiffs hired one of the engineers suggested by Diane Knox and expended a substantial amount of money to comply with the ordinance. After expending considerable costs and making numerous renovations to the property to comply with the "Storm Water Management and Control" ordinance, plaintiffs were granted the necessary permits to complete the convenience store and gas station.

At some point thereafter, plaintiffs claim to have discovered that many other developers and businesses had not complied with the "Storm Water Management and Control" ordinance, yet had been granted permits. Plaintiffs claim that "from January 1, 1990 through December 5, 1996, in excess of 40 sites were identified that either did not comply with the storm water ordinance, did not contain documentation of a variance or did not have a building permit form, which is to be preceded by consideration of storm water detention." Doc. 35, p. 5 referring to attached Ex. A. Plaintiff Mr. Heaton also states that when he had developed and sold the two previous properties in the City of Princeton, the ordinance at issue had never been mentioned to him, and he was apparently not made to comply with it when he obtained those prior permits.

Plaintiffs allege two distinct claims in this action. First, plaintiffs claim that the defendants have enforced the Storm Water Management and Control ordinance against them in a manner that violates plaintiffs' right to equal protection and due process under the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 and § 1988, as well as the protections of § 13 and § 242 of the Kentucky Constitution.

In their second claim, plaintiffs allege that they were forced to utilize a significant amount of their real property for retention basins and flowage easements in order to comply with the Storm Water Management and Control ordinance. Plaintiffs claim that this constituted a taking of their property by the government without equal protection and due process under the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 and § 1988, as well as the protections of § 13 and § 242 of the Kentucky Constitution.

### SELECTIVE ENFORCEMENT

"There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere; and prosecutors have broad discretion in deciding whom to prosecute." *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir.1996) (internal citations omitted).

Nevertheless, there are some instances in which enforcement of an otherwise valid law may state a constitutional claim. This occurs when enforcement of a valid law is used as a means of achieving invidious discrimination because of membership in a protected group or in retaliation for the exercise of a constitutionally protected right. *Futernick*, 78 F.3d at 1056. The doctrine of selective enforcement has been developed by the courts to address this problem. Selective enforcement generally arises as a defense in a

criminal prosecution or a regulatory enforcement action. "In this context, the court should dismiss a case, or take other appropriate action, if the defendant can prove that the prosecutor or investigator intentionally 'singled him out' for punishment because of membership in a protected group or the exercise of a constitutionally protected right." *Futernick*, 78 F.3d at 1056.

■ The Sixth Circuit has differentiated between two types of selective enforcement claims. "True selective enforcement" is the conscious exercise of some selectivity in enforcement as purposeful discrimination intended to accomplish some forbidden aim. *Futernick*, 78 F.3d at 1056. In *Futernick*, the Sixth Circuit held that "forbidden aims" include intentional selective enforcement because of race, nationality, religion, gender or "other arbitrary classification." *Id.* at 1057. "The term 'arbitrary classification' implies that certain other group distinctions could be a basis for liability—such as the alleged focus on abortion clinics in Birth Control Centers." [1] *Id.*

■ "Vindictive enforcement" is selective enforcement intended to discourage or punish the exercise of a constitutional right, especially the right to criticize the government. *Futernick*, 78 F.3d at 1057. In order to state a claim for vindictive

1. The Sixth Circuit also noted in *Futernick* that:
 On the other hand, every "arbitrary classification" cannot be a basis for liability. Mere arbitrariness—prosecuting everyone whose first name begins with the letter A, for example—does not indicate any constitutionally impermissible intent. In fact, random choice may be one of the most sensible methods to allocate "equally" finite enforcement resources.
 *Futernick*, 78 F.3d at 1057, n. 8.

2. Defendant references the test for selective enforcement as set out in *Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir.1995). *Zahra* found that a selective enforcement claim is proper where:
 (1) the person, compared with others similarly situated, was selectively treated, and
 (2) the selective treatment was motivated by

enforcement, a plaintiff must show: (1) exercise of a protected right; (2) the prosecutor's "stake" in the exercise of that right; (3) the reasonableness of the prosecutor's conduct; and presumably, (4) that the prosecution was initiated with the intent to punish the plaintiff for exercise of the protected right.[2] *Id.* at 1056, n. 7 *citing United States v. Hazel*, 696 F.2d 473 (6th Cir.1983).

In this case defendants have moved for summary judgment on plaintiffs' selective enforcement claim on grounds that there is no evidence or allegation that the alleged selective treatment was used as a means of achieving invidious discrimination because of membership in a protected group or in retaliation for the exercise of a constitutionally protected right. In response, plaintiffs assert in their response memorandum that:

> In this plaintiffs' case, however, such "impermissible consideration" exists. It is plaintiffs' belief that there has been insufficient information obtained to determine the actual motivation and intent of the City of Princeton and its employees in enforcing the ordinance selectively as against the plaintiffs. There is enough evidence to suggest, however, that Mr. Heaton was being punished for exercising his protected first amendment rights. Mr. Heaton publicly,

an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.
*Zahra*, 48 F.3d at 683. Similar to *Futernick*, *Zahra* requires more than mere selective treatment. *Zahra* is consistent with *Futernick* to the extent that it also requires that the selective treatment be used with an intent to discriminate on the basis of a forbidden aim (true selective enforcement) or that the selective treatment with an intent to punish or inhibit the exercise of constitutional rights (vindictive enforcement). However, the Sixth Circuit in *Futernick* found that a selective enforcement claim may not be based upon a malicious or bad faith intent to injure. *Futernick*, 78 F.3d at 1060 (6th Cir.1996).

through his vocal support and the provision of money, exercised these rights by supporting a candidate for the mayoral race other than Mayor Sherman Chaudoin, the successful candidate for mayor of Princeton since 1990. Mayor Chaudoin has served a four year term and is now currently serving a five year term. Although such an intent or motivation has not been admitted by the defendants, clearly a retaliatory or malicious motivation for the selective enforcement would be violation of plaintiffs' constitutional rights.

Doc. 35, p. 7.

Plaintiffs cite *Dubuc v. Green Oak Township*, 958 F.Supp. 1231 (E.D.Mich. 1997) in support of their argument that summary judgment is inappropriate under the posture of this case. In *Dubuc*, the plaintiff claimed that the defendants acted against their property development to retaliate against him for exercising his First Amendment rights against the defendant Township. Plaintiff's proffered protected acts included: (1) bringing a successful lawsuit against the Township in 1986 and then bringing two later complaints that prompted performance evaluations to be conducted of the Township Building Department by the State of Michigan, evaluations that were negative to the Township; and (2) that plaintiff had criticized the Township and its officials including the Township attorney, in newspaper articles and in public forums. *Dubuc*, 958 F.Supp. at 1235. The defendants admitted that they had treated plaintiff differently from others, but claimed that such different treatment was exercised only because plaintiff was prone to litigate any mistakes or perceived injustices that might occur in the Township's dealings with him. *Id.* In denying defendants' motion for summary judgment, the court held that plaintiff had proffered sufficient evidence that could support a finding of retaliatory intent. *Id.* at 1238.

There are substantial differences between *Dubuc* and the instant case. In *Dubuc*, the plaintiff had exercised his First Amendment rights with respect to the Township in a highly public manner. There is no dispute that defendants were fully aware of plaintiff's First Amendment activities. Further, defendants admitted that these past protected actions were taken into consideration in their decision to strictly enforce the ordinances against plaintiff, albeit for the alleged non-discriminatory reason.

Plaintiffs also cite *Detroit Area Council Boy Scouts of America; Ajax Paving Ind., Inc. v. Township of Metamora*, 1990 U.S.Dist.Lexis 19794 (S.D.Ohio 1990) as a similar case in which a fact issue was found to preclude summary judgment. Doc. 35, p. 11. In *Detroit Area Council Boy Scouts*, plaintiffs sought to excavate gravel from approximately thirty acres of a ninety-five acre tract of land for the purpose of transporting it to another site to be used to build a ten-acre recreational lake. The defendant Township's zoning ordinance did not provide for the mining extraction or quarrying of sand, gravel or topsoil from recreational areas. The Township enforced the ordinance against plaintiffs, yet four gravel operations located on land zoned for "agricultural use" were allowed to operate. Plaintiffs argued that they were similarly situated to these gravel operations. The Court found that a fact issue existed as to whether the sites were "similarly situated" and, if so, whether the Township had a rational justification for this disparate treatment.

The district court in *Detroit Area Council Boy Scouts* operated on the assumption, without citing case authority, that a selective enforcement claim would be stated simply by a showing that others similarly situated were treated differently. Upon such a showing, the defendants would be required to demonstrate a rational justification for the disparate treatment. *Futernick*, decided six years later in 1996, clearly sets the requirements for a selective enforcement claim including the additional requirement that the selective

treatment was conducted with an intent to invidiously discriminate because of membership in a protected group or in retaliation for the exercise of a constitutionally protected right. Because *Detroit Area Council Boy Scouts* did not consider this additional element, and because Sixth Circuit case law is precedential, the Court is bound to follow *Futernick* and to disregard the holding in *Detroit Area Council Boy Scouts* to the extent that it is in conflict with *Futernick.*

 In this case, defendants have indicated an absence of evidence on the record to support the fourth prong of the *Futernick* test. As such, the burden shifts to the plaintiffs to point out evidence of a submissible jury issue on this element. Although, plaintiffs clearly allege the fourth prong of a vindictive enforcement claim, plaintiffs do not point to evidence on the record that would create jury issue on the subject. Plaintiffs point to no evidence of the extent of their First Amendment activities in supporting the opposition mayoral candidate, other than that plaintiff Mr. Heaton provided vocal support and money to that candidate. More importantly, plaintiffs point to no evidence on the record that the defendant knew of plaintiffs' support of the opposition party in the Princeton mayor election, much less that defendants acted with an intent to retaliate for that alleged support. Lastly, the ordinance was not enforced against plaintiffs in two previous developments during which time the same basis for discrimination would have apparently existed.

In plaintiffs' brief, it is argued that "[t]he defendants have not admitted such a basis for their selective enforcement against these plaintiffs and quite candidly, it is doubted they ever will. A jury may well be the only way to get a true finding of fact that this is the basis for the City's selective enforcement." Doc. 35, p. 8. A defendant need not admit discriminatory treatment in order to present a jury question. However, where the evidence of record cannot support a jury finding that the alleged enforcement of the ordinance against plaintiffs was intended as retaliation for plaintiffs' support of the unsuccessful opposition mayoral candidate, no jury question is presented. It must be noted that to find otherwise would establish a triable selective enforcement claim whenever a municipality has made a decision adverse to a municipality resident and where that resident had supported an opposing candidate in a high-ranking official's election. As such, summary judgment is appropriate for the defendants on the selective enforcement claim.

## UNCONSTITUTIONAL TAKING WITHOUT COMPENSATION

Plaintiffs also argue that a selective enforcement claim is stated because the City of Princeton ordinance "inhibited the exercise of plaintiffs' constitutional right to the use and enjoyment of plaintiffs' property." Doc. 35, p. 10. There is no question that this argument falls under the Takings analysis, as even a uniform enforcement of the ordinance would result in this alleged constitutional violation.

 Defendants correctly assert that the Sixth Circuit requires that a plaintiff alleging a state taking of property must first attempt an inverse condemnation action in state court before a suit under 42 U.S.C. § 1983 can be considered. Doc. 35, p.20, *citing, Hammond v. Baldwin,* 866 F.2d 172, 179 (6th Cir.1989). Plaintiffs fail to brief this issue.

In *Hammond,* landowners alleged that the permit required for waste water treatment for a new manufacturing facility resulted in a "taking" in violation of due process. The Sixth Circuit held that

Kentucky provides a cause of action for inverse condemnation when a citizen alleges that his property has been taken through the exercise of the state's regulatory powers. *Commonwealth v. Stearns Coal and Lumber Co.,* 678 S.W.2d 378 (Ky.1984). Thus the plaintiffs have a state remedy to address the

alleged damage to their property; and a suit under 42 U.S.C. § 1983 is inappropriate until a final decision of the state in an inverse condemnation action is entered against the plaintiffs."

*Hammond,* 866 F.2d at 179.

A Federal District Court for the Eastern District of Kentucky has applied this mandate in a suit against the City of Williamstown, Kentucky. *Green v. City of Williamstown,* 848 F.Supp. 102 (E.D.Ky. 1994). The court held that the plaintiffs' takings claims were premature because

> [i]f a state affords an adequate procedure for securing just compensation, property owners cannot pursue a federal claim until after they have invoked the state procedures and been refused just compensation. Until the property owners pursue state remedies, their case is not ripe. If a claim is unripe, federal courts lack subject matter jurisdiction. E.g., *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985); *Bigelow v. Michigan Dept. of Nat'l Resources,* 970 F.2d 154, 157 (6th Cir.1992); *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1214–15 (6th Cir.1992). It is undisputed that Kentucky provides such remedies and the [plaintiffs] did not pursue a state court action for inverse condemnation. [footnote omitted] E.g., *Keck v. Hafley,* 237 S.W.2d 527 (Ky.1951) (authorizing inverse condemnation actions against the state).

*Green,* 848 F.Supp. 102.

■ Since the Plaintiffs in the current case have not attempted an inverse condemnation suit in Kentucky state court, their taking without compensation claim is not ripe for this Court to review. Therefore, summary judgment is appropriate for the defendants on the takings claim.

### STATE CLAIMS

The dismissal of the above stated claims leaves no Federal claim pending before this court. While this court has jurisdiction over the supplemental state claims, "needless decisions of state law should be avoided." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Supreme Court has stated that if all of the federal claims are dismissed before trial, the pendent state claims should be dismissed as well, even if the state claims are "not insubstantial in a jurisdictional sense" *Id.* (citations omitted). Therefore, Plaintiffs' state claims asserted under §§ 13, 242 of the Kentucky Constitution should be dismissed.

An appropriate order shall issue.

### OPINION AND ORDER

This matter is before the court upon Plaintiffs' motion to vacate and/or reconsider summary judgment and for rehearing. Plaintiffs assert that summary judgment was not appropriate because there remained a genuine issue of material fact, and that discovery had not closed.

Despite Plaintiff's complaint that this Court relied upon a case not briefed by the parties, *Futernick v. Sumpter Township,* 78 F.3d 1051 (6th Cir.1996), this Court must apply controlling Sixth Circuit case law. In *Futernick,* the Sixth Circuit clearly established what a plaintiff must show in order to succeed with a "selective enforcement" case. One of the elements is that plaintiff must prove that the prosecution was initiated with the intent to punish the plaintiff for exercise of a protected right.

Plaintiff is correct that this element presents a fact question for the jury, and that the burden of showing no genuine factual dispute is on the moving party. However, once the moving party has shown no genuine factual dispute, the burden shifts to the Plaintiff to come forward with some evidence to support such a jury verdict.

In the current case, Plaintiffs offer only that Mr. Heaton supported the political

848

opposition, that Defendants knew of this support, and that the Defendants enforced an ordinance as it applied to Mr. Heaton. Repeated allegations that the enforcement of the ordinance was in retaliation for prior political opposition does not make up for the fact that the Plaintiff offers no evidence in the record to support the allegation. As this Court stated in its earlier opinion granting summary judgment (dkt.# 41), to find otherwise would establish a triable selective enforcement claim whenever a municipality has made a decision adverse to a municipality resident, and where that resident had supported an opposing candidate in a high ranking official's election.

Plaintiffs' claim that summary judgment was premature because discovery had not closed is also without merit. Discovery deadlines had been stayed in this case upon defendants 'motion, specifically to stay the deadline for disclosure of defendant experts. The primary purpose of *defendants*' motion, to which Plaintiff did not object, was to prevent the expense of meeting such deadlines when such expenses could be obviated by this Court's ruling on summary judgment. Disclosure of such experts has no bearing on Plaintiffs' evidence. In addition, this action was filed in May 1996, and discovery was extended on one occasion. There was more than ample time for discovery. Plaintiff has made no showing that Plaintiff required additional time for discovery.

Therefore, the defendants having made a motion to vacate and/or reconsider summary judgment and for rehearing, and the Court being sufficiently advised,

**IT IS ORDERED:** that the defendants' motion (Dkt.# 42) is **DENIED.**

This is a final and appealable order. There is no just cause for delay.